## MILEY v. FIRESIDE MUT. INS. CO.
### No. 2200.

Court of Appeal of Louisiana.   First Circuit.
March 4, 1941.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Fred G. Benton, of Baton Rouge, for appellee.

LE BLANC, Judge.

This is an appeal from a judgment in a suit in the City Court of the City of Baton Rouge in which the plaintiff was awarded the sum of $75 arising out of his demand on an accident policy issued to him by the defendant insurance company. The accident which he had suffered resulted in the fracture of his right arm, between the elbow and the shoulder, the benefit for which, he contends, the defendant company had bound itself to pay, is the sum of $50. In addition to his demand for $50 plaintiff also claims the penalty of double the amount of the benefit and attorneys' fees in the sum of $150 for delay in payment, according to the provisions of Act No. 310 of 1910. The claim for penalty was denied in the judgment appealed from but attorneys' fees in the sum of $25 were awarded.

The issue presented is purely one of construction of the language and terms of the policy in connection with the injury sustained.

In listing the accident benefits, the policy provides that the company will pay to the insured certain amounts stipulated in an accompanying table, for each bodily injury therein listed. In one column of the table there are stipulated amounts for the loss of certain members, for instance, loss of

both feet, $500, loss of one hand, $100, and so on. In the adjoining column, we find a heading which reads: "For the Complete Fracture of Bones, viz:" and under that heading is listed a number of bones of the body. The particular fracture with which we are concerned in this suit, according to the table, is that "of the arm—between elbow and shoulder," and for which the benefit is the sum of $50. It is the contention of the insurance company that the clear provision of that clause in the policy is that the benefit is payable only for the "complete" fracture of the bone involved and that as the medical testimony shows that the fracture sustained by plaintiff was an "incomplete" fracture, he cannot recover.

The case was tried on an agreed stipulation of facts and on the testimony of Dr. R. C. Kemp, the physician who attended plaintiff when he broke his arm. The stipulation includes an X-ray report made by Dr. Lester J. Williams to whom Dr. Kemp had referred plaintiff, which reads as follows: "X-ray examination of W. R. Miley's right hemithorax and shoulder show a small incomplete fracture of the right humerus at the greater tuberosity. There is no displacement." It was further agreed that Dr. Williams' diagnosis was concurred in by two reputable and qualified physicians specializing in X-ray work.

The testimony of Dr. Kemp is to the effect that he saw plaintiff on September 12, 1939, the date of his accident, and that a physical examination revealed evidence of an injury about the shoulder. "There was evidence of fracture" he says, "so I referred him to Dr. Williams who then reported incomplete fracture of the humerus at the greater tuberosity." He testifies further that plaintiff's arm was immobilized for eight weeks, after which he developed a sub-deltoid bursitis which necessitated further treatment until the month of March following. Dr. Kemp was asked to state the difference between a complete and an incomplete fracture and said that it all depended upon what part of the bone is involved. In this case he states that the fracture, although referred to as incomplete, was "very distinct" and that it was incomplete "in the sense that the line of fracture did not extend through the entire bone."

In view of this testimony given by Dr. Kemp it is our opinion that the defendant insurance company is resorting to

a rather strained and technical interpretation of the provision of the policy in order to avoid payment. In Corpus Juris, vol. 1, p. 417, in treating the topic "Accident Insurance", the text states that the language of the contract in policies of that class of insurance "should be construed as a whole and should receive a reasonable interpretation," and further, that the terms "should be understood in their plain, ordinary, popular sense, rather than in a philosophical or scientific sense."

Undoubtedly, as shown in this case, an examination and finding by a man versed in medical science is necessary before a fracture of a bone can be classified as being complete or incomplete. We might even go further and state that very probably, in most cases, the ordinary practitioner of medicine would not definitely commit himself on this question without the intervention of a further scientific examination by means of an X-ray machine. In this very case, the examining physician who was first consulted saw evidence of a fracture but apparently was not prepared to rest his own judgment on that evidence and found it necessary to refer the plaintiff to an X-ray specialist and obtain a further scientific report or opinion from him.

■ To the ordinary layman, the appearance of a man with his arm placed in a splint or cast conveys the idea of a "broken" or "fractured" arm. That is, what such an injury means to him in the "plain, ordinary, and popular sense" and any distinction as to the break or fracture being complete or incomplete, simple or compound, or any other kind there may be, has to be left to the more learned or scientific mind. Under that rule of interpretation as announced in the cited authority, we think that the plaintiff has shown that he is entitled to recover.

. Learned counsel for defendant refer to the case of Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 73, 125 A.L.R. 1075, in which the plaintiff was denied recovery for the alleged loss of a hand under the provisions of a group accidental death and dismemberment insurance policy. Although the Court found in that case, that the hand, as it was, was useless, the loss of its use was held not covered because the policy specifically provided for "loss of one hand by severance at or above wrist-joint." The language of the provision was held to be free of ambiguity and as it explicitly limited the liability of the insurer to the loss of the hand by "severance" and there had been no severance or amputation, plaintiff could not recover. The policy which we have before us in this case has a similar provision with regard to the benefits payable for the loss of a member. After enumerating each, there is a special clause defining the term "loss" as "dismemberment by severance at or above the wrist or ankle joints." There could be no doubt therefore as to the meaning of the provision regarding the loss of a hand or foot as was held with regard to a similar provision in the policy sued on in the case cited by counsel. But no such qualifying or defining phrase or clause is used in connection with the provision relating to what is termed "complete fracture of bones," and for the meaning of that term, as we have shown, it becomes necessary for one to address himself to a person trained in the science of medicine and more particularly, we might add, to one engaged in some special branch of that science. We do not believe that such an idea enters into the mind of the ordinary layman when he contracts with an insurance company for a policy of insurance containing such a provision, nor do we think that the law contemplates such an understanding or agreement on his part.

Plaintiff has answered the appeal, asking that the judgment be amended with respect to the penalty demanded and also that the award made for attorneys' fees be increased.

■ The Statute, Act 310 of 1910, which prescribes a penalty against an insurance company of the nature of the one herein involved, for delaying payment for a longer period than thirty days from due notice and proof of disability, provides in Section 3, "that the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted." The delay, therefore, must be without just and reasonable grounds. As we believe that the issue of construction of the terms of the policy herein involved, tendered by the defendant insurance company in this case, was one which reasonably required judicial interpretation, it cannot be said that the delay or refusal to pay was unjust or wholly unfounded. In the

case of Massachusetts Protective Association, Inc. v. Ferguson et ux., 168 La. 271, 121 So. 863, 866, the Supreme Court declared that "penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt." As the attorneys' fees are a part of the penalty provided for under the section of the Act just quoted, we are unable to see how any distinction can be made with regard to such fees. Inasmuch therefore as the judgment appealed from made an award for attorneys' fees, it will have to be amended.

For the reasons herein stated it is now ordered, adjudged and decreed that the judgment appealed from be amended by eliminating therefrom the award in the sum of $25 as for attorneys' fees, and that, as thus amended, it be affirmed at the costs of the appellant.