TATE, Judge
(dissenting).
I regretfully differ from my learned brethren, and I adhere to the views previously expressed in the original opinion of this Court herein.
In my opinion, interpreting this health and accident insurance company’s policy according to the technical definitions of medical men rather than by the ordinary meaning of the terms employed, is fundamentally unrealistic and incorrect. It is equivalent to holding that the meaning of this contract is to be determined by conditions printed in microscopic type, invisible to the eyes of the laymen (agent selling, and policyholder purchasing) who actually negotiated this contract. The medical testimony herein, and all previous reported court decisions concerning the term, agree that the laymen when he speaks of a “hernia” refers to the inguinal hernia or rupture of the lower abdomen, and does not conceive of it as applying to the chest pain known as a “diaphragmatic hernia” from which the present plaintiff was suffering, or to a skull fracture (which technically may be a cerebral hernia) or to a ruptured intervertebral disc (which is technically a hernia of the *794 nucleus pulposus); see cases from other jurisdictions cited in original opinion; see 19 Words and Phrases, p. 410, Hernia and especially Pocket Part thereto; see 12 Words and Phrases, p. 553, Diaphragmatic Hernia; see 15 Words and Phrases, Pocket Part,' Esophageal Hiatus Diaphragmatic Hernia.
The identical question of whether the technical medical definition (under Article 1947, LSA-C.C.), rather than the “common and usual” meaning thereof, Article 1946, LSA-C.C., is to he applied in interpretation of a health and accident and medical payment policy has already been litigated and decided adversely to the insurer.
In Miley v. Fireside Mutual Ins. Co., La.App., 200 So. 505, 507, the late Mr. Justice LeBlanc as the organ of this Court enunciated the principle that the popular and ordinary meaning of the terms used in a health and accident policy should be adopted in construing said policy, rather, than the medical and scientific meaning thereof. In this case, the policy provided benefits for what it denoted , as “complete fractures”. Although the insured sustained what was medically an “incomplete fracture”’, this Court allowed recovery on the basis of the intention of the parties according to the common and ordinary meaning of the term.
As stated there, if the rule followed by the majority herein were adopted,
“for the meaning of that term, as we have shown, it becomes necessary for one to address himself to a person trained in the science of medicine and more particularly, we might add, to one engaged in some special branch of that science. We do not believe that such an idea enters into the mind of the ordinary layman when he contracts with an insurance company for a policy of insurance containing such a provision, nor do we think that the law contemplates such an understanding or agreement on his part.”
Similarly, in Beard v. Peoples Industrial Life Ins. Co., La.App., 5 So.2d 340, 341, Justice Hamiter as organ of the Second Circuit adopted a similar rule in allowing full 26 weeks disability recovery for a sacroiliac “sprain”, despite a policy provision which limited recovery for “sprains” to 2-weeks.
In Lewis v. Liberty Industrial Life Ins. Co., 185 La. 589, 170 So. 4, 107 A.L.R. 286, our Supreme Court reversed the Orleans Court which as the Supreme Court stated had adapted a “technical” construction of the terms in a policy; the Supreme Court adapted a construction according to the common, everyday usage of the terms.
Recently, in McKinney v. American Security Life Ins. Co., La.App., 76 So.2d 630, 631, the Second Circuit affirmed a District Court judgment which had refused to strictly construe a health and accident policy according to the precise meaning of the terms involved, and had allowed recovery based on common, everyday usage of the language as determining the intention of the parties.
The principle that technical meanings attach to technical words, Article 1947, LSA-C.C., relied upon by the majority to reach its result on rehearing, is not peculiar to the LSA-Civil Code. It is the rule in the common law States, also, and as noted in the original opinion herein, in every State where the question has been litigated, the exclusionary word “hernia” is interpreted to refer only to what are commonly and ordinarily known as hernias, and not to diaphragmatic hernias or other types of technical hernias.
The following quotations from Corpus Juris Secundum as to the rule, and as to the qualifications thereof, are self-explanatory:
17 C.J.S., Contracts, § 302, p. 720:
“Technical words will be taken in a technical sense, as, for example, legal terms, unless they are clearly used in a different sense. So, where technical words are employed by parties who are obviously unfamiliar with their meaning, they may be construed in such a manner as to effectuate the true intention of the parties.” (Italics ours.)
*795 17 C.J.S., Contracts, § 586, p. 1228:
“The burden of showing that the language of a contract has a technical meaning, and of establishing such meaning, is on the party asserting it, unless the contract is with reference to a particular trade or business in which words and phrases have a technical or peculiar meaning.”
44 C.J.S., Insurance, § 294, p. 1155, with especial reference to health and accident policies:
“A contract of insurance is to be construed according to the sense and meaning of the words or terms which the parties have used in the policy, and, as a general rule, if there is no fraud, concealment, or deception in the issuance of the policy, and the words or terms are clear and unambiguous, they are to be taken and understood in their plain, ordinary, usual, and popular sense, rather than in their technical, philosophical, or scientific sense, as defined or used by lexicographers, scientists, or persons skilled in the niceties of language; or, as otherwise stated, the words or terms should be taken and understood as an average or reasonable person, with usual and ordinary understanding, would construe them when used to express the purpose for which they are employed in the policy.
“The general rule applies in interpreting words or terms employed in a contract or policy of accident insurance, * * *.''
To reach its decision, the majority must decide that the word “hernia” is clear and unambiguous as excluding the type of chest ailment from which petitioner herein suffered ; for if it is ambiguous, it is to be construed against the party who wrote the contract, namely the insurer; Article 1957. That the medical term “hernia”1 is at least ambiguous when used in a legal contract is evidenced, I think, by the fact that every other court in every other reported decision called to our attention faced with the problem presently before this court has construed the term “hernia” according to its ordinary popular meaning, and specifically not according to its technical medical definition ; see cases cited in the original opinion of this court.
So crystal clear in my opinion is the jurisprudence that policies such as these are to be construed to accomplish the purposes thereof in affording protection to the insured against medical expenses because of illness, that the more favorable to the insured of two interpretations is to be adopted in determination of the protection afforded by contract, and that the ordinary and popular rather than the technical meaning of the terms employed, determines the meaning of such policies,. I originally agreed with .the, District Court that penalties for arbitrary refusal to ,pay should be. allowed the insured in view of the unanimous jurisprudence from other States refusing to apply the medical term “hernia” restrictively to exclude protection for ailments such as the present.