89 So.2d 113

Earl A. SEGUIN

v.

CONTINENTAL SERVICE LIFE & HEALTH INSURANCE COMPANY.

No. 42724.

June 11, 1956.

Rehearing Denied June 29, 1956.

Cadwallader & Dameron, Mary Bird Perkins, Baton Rouge, for applicant.

Huckabay, Seale, Kelton & Hayes, Baton Rouge, for respondent.

HAWTHORNE, Justice.

On October 15, 1952, plaintiff obtained a policy of insurance, of a type commonly called a health and accident policy, which provided for the payment of hospital and medical expenses in the event of illness or accident. On June 10, 1953, within one year from the date of the issuance of the policy and while it was in full force and effect, plaintiff, developed a condition diagnosed as diaphragmatic hernia. The herniation consisted of the projection of the stomach into the thoracic cavity through the opening in the diaphragm normally occupied by the esophagus, and in plaintiff's case the opening was large enough to permit the stomach freely to enter into the thoracic cavity. He was operated on for this condition on June 29, and as a result incurred surgical and hospital expenses in the amount of $489.97. Payment of these expenses was refused by the insurance company, and plaintiff instituted suit to recover the amount of these expenses together with the penalties provided by R.S. 22:657 and attorney's fees. The district court rendered judgment in his favor for the amount of expenses incurred plus penalties in a like amount and $200 attorney's fees. The Court of Appeal, First Circuit, by a divided court reversed this judgment and dismissed plaintiff's suit. See 83 So.2d 789 (on rehearing). On application of plaintiff to this court writs were granted.

As a defense to plaintiff's claim the insurance company relies on the following exclusion clause in the policy of insurance:

"Article IV—Waiting Periods:

"Twelve (12) consecutive months of continuous membership under this certificate before LPS will assume liability for payment of surgical or medical services, or hospital care for pre-existing conditions, tonsils, adenoids, hemorrhoids, and hernia."

The Court of Appeal, relying on Article 1947 of the Louisiana Civil Code, which provides that technical phrases are to be in-

terpreted according to their received meaning with those who profess the art or profession to which they belong, concluded that the word "hernia" as used in the exclusion clause is a technical medical term and according to the medical profession includes diaphragmatic hernia, and that such disability is excluded from coverage under the policy of insurance for the first year, and that consequently plaintiff cannot recover.

The question here presented is whether the unqualified word "hernia" as used in the health and accident policy should be technically construed under Article 1947, or whether the word should be construed in its plain, ordinary, popular sense under Article 1946, which provides that the words of a contract are to be construed, like those of a law, in the common and usual signification.

In a strict, technical, and medical sense, a hernia is any protrusion consisting of an organ or part projecting through some natural or accidental opening in the walls of its natural cavity. See Webster's New International Dictionary (2nd ed. Unabridged). According to the evidence, inguinal, femoral, umbilical, epigastric, and diaphragmatic hernias are a few that are associated with the abdomen. However, in its technical sense the word includes also ruptured intervertebral disc, cerebral hernia, hernia of the eye, hernia of the lung, and, in fact, any protrusion through an abnormal opening. On the other hand, in its ordinary, popular sense, the word "hernia" means simply a rupture or *noticeable* protrusion from some part of the abdominal cavity. See 39 C.J.S. p. 896.

In the instant case the Court of Appeal in the majority opinion says [83 So.2d 792]:

"* * * All of the doctors testified that the most common hernia was the type which protruded through the front, or anterior, abdominal wall, however, in medical terminology, a diaphragmatic hernia, which protruded through the upper wall was a true hernia. *The medical experts agreed that the layman's common conception of the term hernia was a protrusion through the front abdominal wall.*" (Italics ours.)

The Courts of Appeal of this state on numerous occasions have been called upon to interpret and construe the meaning of the terms and provisions of health, accident, and sickness insurance policies. For instance, in Miley v. Fireside Mut. Ins. Co., La.App. 1st Cir., 200 So. 505, 507, the court said:

"* * * In Corpus Juris, vol. 1, p. 417, in treating the topic 'Accident Insurance', the text states that the language of the contract in policies of that class of insurance 'should be construed as a whole and should receive a reasonable interpretation,' and further, that the terms 'should be understood in their plain, ordinary, popular sense, rather than in a philosophical or scientific sense.'"

Again, in Beard v. Peoples Industrial Life Ins. Co. of Louisiana, La.App. 2d Cir., 5 So.2d 340, 342, it was stated:

"In the construction and interpretation of contracts of insurance, just as with other contracts, the intention of the parties is of paramount importance. This intention is determined in accordance with the plain, ordinary and popular sense of the language which they have used in the agreement, and by giving consideration, on a practical, reasonable and fair basis, to the instrument in its entirety."

See also McKinney v. American Security Life Ins. Co., La.App. 2d Cir., 76 So.2d 630.

It must be remembered that a contract of insurance is prepared by the insurance company, and that the company contracts through its agents with ordinary laymen who do not know the technical meaning of medical words and phrases. No doubt this is one of the reasons why the courts in construing the meaning of medical words and phrases found in health, accident, and sickness policies have consistently said that such words and phrases should be understood in their plain, ordinary, and popular sense rather than in their scientific sense. In the instant case we do not think the parties intended that the word "hernia" should include, for instance, a hernia of the brain or a hernia of the lung or a hernia of the eye. We think it is proper that their intention should be determined in accordance with the plain, ordinary, and popular sense of the language which the parties used in the contract, that the Court of Appeal improperly applied the provisions of Article 1947 in denying plaintiff recovery, and that the court should have properly construed the exclusion clause under the provisions of Article 1946 of the Civil Code and should have found that the word "hernia" means simply a rupture or noticeable protrusion of part of the viscera through the front abdominal wall, which is the common, ordinary, accepted meaning of the word.

Respondent contends that the word "hernia" in its customary usage is generally identified with that group of hernias relating to the abdomen, which, as we have pointed out, includes inguinal, femoral, umbilical, epigastric, and diaphragmatic hernias. Respondent then argues that since diaphragmatic hernia is a hernia of the abdominal group, such a hernia falls within the common and customary use and meaning of the word "hernia". We cannot agree with this contention, and, as we have already stated, a diaphragmatic hernia is not a hernia within the common and ordinary meaning of that word.

In permitting the plaintiff to recover the penalty provided by R.S. 22:657 together with attorney's fees in the sum of $200, the trial judge in his reasons for judgment tells us:

"Defendant concedes that if plaintiff is entitled to any recovery at all the sum of

$489.97 claimed by plaintiff is the correct amount due. Plaintiff asks for said sum of $489.97 together with the additional sum of $489.97 as penalty and attorney's fees to be fixed by the Court, with interest at 5% on both said penalty and attorney's fees, because of defendant's failure to pay the claim within 30 days of date of written notice, all as provided for by LSA–R.S. 22:657.

"The record shows that proof of loss together with medical and hospital bills were submitted to defendant on August 31, 1953, and that on September 20, 1953, defendant, through its claims manager Arthur A. Maxey, wrote plaintiff a letter denying liability on the ground that the policy excluded hernia within the first 12 months of its effective date. On October 3, 1953, plaintiff's attorney answered defendant's letter of September 30, 1953, and in his reply stated that defendant's claims manager had been advised in a telephone conversation with plaintiff's attorney that there were certain reported decisions favoring plaintiff's position and that counsel for plaintiff had offered to furnish citations of said decisions to defendant's claims manager. This letter further advised defendant that no request had been made by defendant's claims manager with regard to the citations offered to be produced by plaintiff's attorney. In addition this same communication advised defendant that plaintiff had that day filed suit on his claim.

"Mr. Maxey, defendant's claims manager, was called as a witness and he did not deny having been advised of the existence of certain decisions reportedly favorable to plaintiff's cause but he did state that he did not recall such a telephone conversation with plaintiff's attorney. Maxey further stated that he did not discuss plaintiff's claim with the company attorney or medical director but determined for himself that a diaphragmatic hernia was a hernia within the meaning of the word hernia as used in the policy and therefore plaintiff had no basis for a claim under the policy and accordingly he, Maxey, denied liability on behalf of defendant company.

"Considering the correspondence and conversations which transpired between Maxey, defendant's claims manager, and plaintiff's attorney it appears to the Court that Maxey's action in denying liability without consultation with either the company's attorney or medical director was not only, unreasonable, arbitrary and capricious but also most ill advised from the standpoint of sound administrative business policy and practice. Maxey was advised of reported decisions which held contrary to his own personal views and despite such information he undertook to usurp duties and responsibilities ordinarily incumbent upon an attorney-at-law, namely, the matter of deciding as a matter of law that the word 'hernia' as used in a policy of insurance includes a

diaphragmatic hernia. Maxey's failure to consult with the company attorney and medical director on such a technical and unusual problem requiring legal advice and analysis indicates to us a lack of judgment and discretion sufficient to characterize his action as arbitrary to say the least.

"We admit that the matter presented is res nova but it cannot even be said that Maxey's action was not arbitrary because the question involved has never been decided by the Louisiana Courts for it is settled jurisprudence that although an insurer under a health and accident policy has a right to test its liability in the Courts and demand a judicial interpretation of the provisions of a policy a company must file such test case at its own expense and not at the expense of the policyholder. Campasi v. Mutual Benefit Health & Accident Association, 207 La. 758, 22 So.2d 55. Since defendant undertook to test its liability under the policy before paying plaintiff's claim it assumed the risk incident thereto and has incurred the penalties provided for by LSA-R.S. 22:657.

"In view of the foregoing we hold that the action of defendant company in failing to pay plaintiff's claim within the 30 day period provided for by the statutory provision above referred to was unreasonable and arbitrary and that, accordingly, judgment will be rendered against defendant for a penalty of $489.97 together with interest thereon at the rate of 5% per annum from August 31, 1953, until paid."

Under the facts of this case we are in full accord with the judgment of the district court in assessing penalties, as we do not believe that under these facts the insurance company had just and reasonable grounds for refusal of payment. The claims manager made no investigation, but took it upon himself to interpret the word "hernia" without even consulting the company's own medical director, in spite of an offer of the attorney for plaintiff to furnish him with legal authorities showing that his interpretation was not correct; and on his own interpretation he denied plaintiff's claim. In Phelps v. Southern National Ins. Co., La. App., 83 So.2d 463, 468, the Court of Appeal, Second Circuit, said:

"Nor do we think defendant should escape liability for the penalty because in the instant case it misinterpreted both the cause of plaintiff's illness and the legal effect of its policy provisions. A defendant insurer must take the risk of its misinterpretations of its policy. * * *"

In the Phelps case the Court of Appeal cited as authority for the statement just quoted the case of Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409. Moreover, in Campasi v. Mutual Benefit Health & Accident Ass'n, 207 La. 758, 22 So.2d 55, 57, the Supreme Court said:

"It is argued for the insurance company that, as the question of interpretation of the exempting clause in question had not been decided by a Louisiana court when this suit was filed, the company acted 'upon just and reasonable grounds' in denying liability. The company had the right, of course, to test the question of liability under the facts of the case, and to demand a judicial interpretation of the exempting clause in the policy of insurance,—but not at the expense of the assured—except upon just and reasonable grounds. * * *"

As we have already pointed out, we do not think the insurance company had just and reasonable grounds for its refusal to pay plaintiff's claim.

The judgment of the Court of Appeal, First Circuit, is reversed and set aside, and the judgment of the district court is made the judgment of this court. Respondent insurance company is to pay all costs.

McCALEB, Justice (concurring in part and dissenting in part.)

While I concur in the ruling of the majority that a diaphragmatic hernia is not a hernia within the meaning of the exclusion clause embodied in Article IV of the policy, it can hardly be said that the question for decision is so one-sided that the insurer did not have just and reasonable grounds in denying plaintiff's claim under the policy without subjecting itself to the penalties

provided by R.S. 22:657. It appears to me that the fact that a majority of the Court of Appeal for the First Circuit upheld the position taken by the claims manager amply demonstrates that his denial of liability was not groundless. The circumstance that the manager failed to consult the company's medical director or examine the legal authorities which plaintiff's counsel offered to furnish him does not affect the company's right to deny liability under the policy unless his action in doing so was unreasonable. To conclude that, under a policy excluding coverage for hernia, it is unreasonable to deny liability when the assured's ailment is diagnosed as a diaphragmatic hernia (in the absence of Louisiana jurisprudence holding that such hernias are excluded from the exclusion clause) strikes me as the equivalent of saying that the insurer may not contest its liability in any case without subjecting itself to statutory penalties in the event it is cast in judgment.

The cases of Campasi v. Mutual Benefit Health & Accident Ass'n, 207 La. 758, 22 So.2d 55; Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 and Phelps v. Southern National Insurance Co., La.App., 83 So.2d 463, cited by the majority, involve situations different from that presented in this case and are, therefore, distinguishable.

I respectfully dissent from that part of the decree assessing the defendant with penalties.