TATE, Judge
(dissenting).
It is with regret that I must dissent from the majority opinion signed by my esteemed brethren. Not only is the majority’s construction of the “sickness” definition patently incorrect, but perhaps even more serious an objection is that if the majority opinion prevails, it will disastrously limit the intended protection afforded by the “major medical expense” policy, this great new venture of our progressive insurance industry.[1]
The fundamental error of the majority is that never once is the insuring clause of this “major medical expense” policy set forth and applied. As will shortly be shown, the insurer by this clause agreed to 80% of all medical expenses incurred during the term of the policy, whether resulting from injury or from sickness; but less a deduction of $500 for each injury and sickness. A principal purpose of defining injury and sickness was to define “injury” and “sickness” for the purpose of determining application of the deductible amount applying to each injury or sickness, rather than to limit the coverage of the broad insuring clause insofar as concerning the cause of the medical expense loss sustained.
The present is one of the very few instances that a “major medical expense” policy has been involved in litigation. I will therefore at some length show that with relation to the construction of the policy as a whole the majority’s construction of the “sickness” definition has the defect of destroying greatly the purpose and intended coverage of such policies.
1. Erroneous construction of “sickness” definition.
Before discussing the policy as a whole, however, I think it appropriate to dispose of the construction given by the majority opinion to the policy definition of sickness.
This definition is set forth in the policy as follows:
“ ‘Sickness’ as used in this Rider means sickness or disease causing loss commencing while this Rider is in force and for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law.” (Italics mine.)
The majority construes the clause to mean that the sickness defined must be one commencing while the policy is in force. That is, the participial phrase “commencing while this Rider is in force” is deemed by the majority to modify the nouns “sickness or disease”, and not the noun “loss” immediately preceding the phrase.
To the contrary, I think the phrase plainly modifies “loss” and not “sickness or dis *156 ease”, so that the meaning of the definition is that the eligible expense includes a sickness-caused “loss commencing while this Rider is in force”.
Under commonly accepted rules of grammar and punctuation, it would be necessary for there to be a comma separating the phrases “causing loss” and “commencing while this Rider is in force”, if both modified “sickness or disease.”[2] Thus, if the majority deems the policy definition to have the meaning denoted by the bracketed insertions, a comma should be inserted separating “loss” and “commencing” as follows:
“ ‘Sickness’ as used in this Rider means sickness or disease [a] causing loss [,] [b] commencing while this Rider is in force [,[3]] and [c] for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law.”
That is, under the construction accorded by the majority, three phrases in a series modify “sickness or disease”, namely: (a) “causing loss”; (b) “commencing while this Rider is in force”; and (c) “for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law”. Under all usages, the first and second phrases must be separated by a comma between “loss” and “commencing”.
Or if the phrase “causing loss” is regarded as a parenthetic expression explaining “sickness or disease”, then by accepted usages the phrase “causing loss” must be set off by commas, so as again to separate the words “loss” and “commencing” with a comma[4]; so that if the definition has that meaning, it should be punctuated as follows :
“ ‘Sickness’ as used in this Rider means sickness or disease [,] causing loss [,] [a] commencing while this Rider is in force and [b] for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law.”
Of course, the absence of a comma between “loss” and “commencing” indicates very plainly the meaning of the definition to be instead:
“ ‘Sickness’ as used in this Rider means sickness or disease [a] causing loss commencing while this Rider is in force and [b] for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law.”
Thus, the eligible expense very plainly includes a “sickness or disease” which causes a “loss commencing while this Rider is in force”.
But even if it were merely ambiguous whether the phrase “commencing while this Rider is in force” modifies “loss” instead of “sickness or disease”, then under accepted rules of construction ambiguous language in insurance policies is construed most favorably to the insured and against the insurer defendant which prepared the contract. LSA-C.C. Art. 1957; Powell v. Liberty Industrial Life Ins. Co., 197 La. 894, 2 So.2d 638; Lewis v. Liberty Industrial Life Ins. Co., 185 La. 589, 170 So. *157 4, 107 A.L.R. 286; Succession of Cormier, La.App. 1 Cir., 80 So.2d 571. Cf. also, Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113, 55 A.L.R.2d 1014.
2. The condition for which medical treatment was afforded is a “sickness” within the meaning of the policy.
By the accident of November, 1955, plaintiff’s nose was damaged to the extent that she had to breathe through her mouth. While under the policy definition this nose condition did not qualify as an accidental “injury” so as to entitle her in computing the deductible amount to a credit for the cost of the earlier treatment of the nose condition, such condition was clearly a “sickness” within the meaning of the policy and the ordinary meanings assigned to the term.
As stated at 80 C.J.S. Verbo Sickness p. 1277:
“The term ‘sickness’ is said to have a well-defined meaning, and signifies a disease; a malady; a particular kind of disorder; any morbid condition of the body which for the time being hinders and prevents the organs from normally discharging their several functions; any affection of the body which deprives it temporarily of the power to fulfill its usual functions. * ‡ *»
Whether the condition of plaintiff’s nose resulted from a congenital defect, a trauma, or an infectious disease, it was a “sickness” within the meanings ordinarily assigned to such term as comprehensively stated above.
Somewhat similarly, in Doody v. Davie, 77 Cal.App. 310, 246 P. 339, it was necessary for the court to determine whether a sore foot resulting from the accidental stepping upon a nail was a “sickness” entitling a fireman to sick leave, as against the contention that it was an accidental “injury”. In disposing of such contention and awarding judgment in favor of the fireman, the court stated, 246 P. 340: “Appellants assert that the word ‘sickness’ * * * does not include ‘injury’. It certainly does in its popular significance and in the definitions found in such a standard work as Bouvier’s Law Dictionary, wherein it is said: ‘Sickness. By sickness is understood any affection of the body which deprives it temporarily of the power to fulfill its usual functions. * * * Sickness is either such as affects body generally, or only some part of it.’ ”
Defendant’s argument that the condition of plaintiff’s nose was an “injury” and not a “sickness” is in the main based upon cases which concern “the average contract covering injuries caused by accidental means and excluding losses caused by disease”, 1 Appleman, Insurance Law and Practice (1941), Section 401 at p. 487. As the succeeding sections of Appleman’s treatise show, in such event when the policy intent is to cover only losses caused by accidental injury, but to exclude losses caused by sickness or disease, it may be relevant to determine whether the proximate cause of the loss is injury or instead sickness. Appleman, above-cited, Sections 401-407. (But even in those cases it is recognized that the results of an accident, although an “injury” for purposes of affording policy coverage, may be also a sickness or disease. Cf., Appleman, above-cited, Section 404.) Thus, for purposes of determining whether coverage is afforded by policies insuring only accidentally-caused injuries, it may well be that the condition of plaintiff’s nose was an “injury” resulting from accident and therefore protected by such policies.
But the converse is not true, and no case is cited to such effect, that a trauma-caused injury is outside the coverage of policies insuring “sickness”; for such latter term comprehends within its much broader definition both traumatically and non-traumatically caused bodily conditions. Thus, in Murray Blospital v. Angrove, 92 Mont. 101, 10 P.2d 577, a knee injury resulting from an automobile accident was *158 held to be a sickness within the ordinary-signification of the word, and therefore within the protection of a hospitalization contract providing benefits for “sickness”; as against the contention that it was an "injury” not covered by the contract. Likewise, a hernia precipitated by an accidental misstep has been held to be within the coverage of a policy insuring against disability resulting only from “illness”. Massachusetts Bonding & Ins. Co. v. Florence, Tex.Civ.App., 216 S.W. 471.
In summary, the morbid condition of plaintiff’s nose, interfering with her breathing, was a “sickness” within the ordinary signification of the term and within the policy’s meaning (Seguin v. Continental Service Life and Health Ins. Co., 230 La. 533, 89 So.2d 113, 55 A.L.R.2d 1014), and therefore the plaintiff is entitled to recover the contractual portion of the eligible expense or loss occasioned by its medical treatment. For the present policy, construed as a whole, expresses the intention of covering all eligible medical expense incurred during the term of the policy, whether such be occasioned by injury or by sickness. Whether the medical expense is occasioned by injury or by sickness, the benefits are the same; the only difference, in the case of sicknesses resulting from injuries sustained prior to the issuance of the policy, is in the computation of the deductible amount.
3. The policy as a whole.
My esteemed brethren of the majority were led into what in my humble opinion is palpable error by the astute approach of the counsel for the defendant, who analogized the present coverage to that afforded by the more familiar standard or “basic” medical expense policy. The insuring clause of the latter policy ordinarily specifies that it is restricted to payment of benefits for sickness or injury originating or sustained subsequent to issuance of the policy.[5]
An entirely different insuring clause is provided by the usual “major” medical expense policy. This may at once be seen by reference to the rider providing major medical expense coverage to the present insured, the insuring clauses of which rider are set forth in full as an appendix to this dissent.
The insuring clauses provide that the company will pay within the limits of the policy 80% of the “eligible expense” actually incurred “within two years after the date of the accident or first treatment for sickness”, “if injury or sickness shall require, commencing while this Rider is in force, regular treatment by a legally qualified physician”. Sections I and IV, Appendix. “Eligible expense” is broadly defined as including customary charges for almost all conceivable medical services, with the proviso however that “unless the total amount of all such charges incurred as the result of any one injury or sickness shall be in excess of an amount equal to the Deductible Amount specified in Section III [that is, $500], said charges shall not be eligible expense as herein defined.” Section II. “Injury” and “Sickness” are also defined by Section II.
Certain specified and limited exclusions are set forth in the insuring contract (See Appendix, “Part III, Exceptions”); none of these exclusions are here applicable. Expenses incurred by employment-caused accidents or diseases compensable under workmen’s compensation laws are also excluded by the definitions of “injury” and “sickness”, which definitions otherwise have their chief utility in determining *159 the units to which a deductible amount shall apply.
The definition of “sickness” as noted above, includes treatment for physical conditions pre-existing the issuance of the policy, provided the “loss” or medical expense is incurred while the policy is in force (and, of course, also providing that the medical expense exceeds the deductible amount of the policy so as to qualify as a “major” medical expense). This is a major and intended change from the coverage afforded by the “basic” medical policy.
However, as the majority correctly states, “injury” is defined to include only those “sustained while this Rider is in force.” The present case affords an excellent illustration for the reason for this differentiation.
The present facts are these: In November, 1955, the plaintiff was involved in an accident causing a nose deformity, aggravating a condition caused by a prior minor accident in 1943. The present policy was issued in May, 1956. In October of that year, her physicians advised her to undergo an operation upon her nose to correct a severe breathing deformity, as well as to improve her facial appearance. The total cost of such hospitalization and surgery was $985.96. From this amount the plaintiff excluded the deductible amount of $500, leaving a balance of $485.96. She claims by this suit 80% of this amount of eligible expense, that is $388.77.[6]
The policy definition of “eligible expense” includes all customary medical charges for treatment incurred during the policy period in excess of the deductible amount for “all such charges incurred as the result of any one injury or sickness.” See Section II. Unless “injury” were defined to include only those sustained after the issuance of the policy, herein the medical charges at the time of the accident in November, 1955 (prior to issuance of the policy) could also be utilized in computing the deductible amount for this “one injury”; which would mean that the plaintiff could have claimed a greater amount as “eligible expense” of the medical costs of the later nose operation upon which the present claim is based, since the pre-policy treatment for this “one injury” would have exhausted part or all of the deductible amount.

Conclusion.

The importance and the potential mischief of the majority’s opinion herein cannot be overemphasized.
The “major medical expense” coverage is intended to protect against the catastrophic costs of major illness which, statistically, will afflict relatively few of us. This coverage is intended to insure against all medical expense incurred during the existence of the policy, subject only to the deductible amount and to the co-insurance provisions and to the few exclusions; and the coverage specifically does not attempt to limit itself to sickness originating subsequent to the issuance of the policy.
If the majority’s interpretation stands— that the policy covers only losses from sickness or disease commencing while the policy is in force (rather than all disease-caused losses commencing while the policy is in force) — a fundamental purpose of the-policy is destroyed. Cancer, tuberculosis, epilepsy, brain tumors, muscular dystrophy; these and other diseases may technically commence in the body years before their dread presence is known. There “commencement” cannot be fixed with any certainty although they may well pre-exist a “major medical expense” policy maintained for several years; nor can traumatic causation of, for example, cancer or epilepsy be ruled out, according to at least some medical experts. These are the very sort of expensive illnesses the policy is designed *160 to protect against, and yet by the majority interpretation the intended protection afforded against such disastrous illnesses may be nullified.
For the reasons perhaps too fully set forth above, I must therefore respectfully dissent.
Appendix to Dissent.
Group Major Medical Expense Policy
* * * * * * *
Section I
The Company hereby agrees to pay the benefits specified in Section III hereof to any employee insured under this Rider, for eligible expense incurred by him, subject to the above numbered Policy and to the provisions and limitations contained herein.
Definitions
Section II
“Injury” as used in this Rider means accidental bodily injury which causes the loss directly and independently of all other causes and is sustained while this Rider is in force and which does not arise out of any occupation of the Insured Employee for wage or profit.
“Sickness” as used in this Rider means sickness or disease causing loss commencing while this Rider is in force and for which benefits are not payable under any Workmen’s Compensation or Occupational Disease Act or Law.
“Eligible Expense” as used in this Rider means customary charges for physician’s, surgeon’s, hospital or nurse services, ambulance to and from the hospital, operating room, anesthetic, X-ray examinations or treatments, laboratory tests, drugs and medicines and all other therapeutic services or supplies prescribed by the Insured Employee’s physician; provided that, unless the total amount of all such charges incurred as the result of any one injury or sickness shall be in excess of an amount equal to the Deductible Amount specified in Section III, said charges shall not be eligible expense as herein defined.
Section III
The limit of payment under Section IV of this Rider will be: * * * $5,000.00[1]
The Deductible Amount under Section IV of this Rider will be: * * i: $500.001
Section IV. Expense Benefit-Application of Deductible Amount
If injury or sickness shall require, commencing while this Rider is in force, regular treatment by a legally qualified physician or surgeon, the Company will pay 80 per cent of resulting eligible expense, actually incurred by the Insured Employee within two years after the date of the accident or first treatment for sickness, in excess of the Deductible Amount and up to the Limit of Payment sot forth in Section III of this Rider, as the result of any one accident or sickness, subject to the following provisions:
(a) only one Deductible Amount shall be applied against payment for eligible expense incurred as the result of any one injury or sickness; and
(b) only one Deductible Amount shall be applied against payment for eligible expense incurred during any one consecutive twelve months period while this Rider is in force.
[The only exceptions shown are:]
Part III. Exceptions
This Policy does not cover any expense incurred because of:
1. pregnancy, childbirth or miscarriage, except that in case of a complication incident to pregnancy, other than surgical procedure for the delivery of child or children, the Company will pay, in accordance with the Expense Benefit set forth in Section IV of the attached rider (s), such eligible expense as it can determine is in excess of the expense which would have been incurred in the absence of such complication, or
2. self inflicted injury, or
3. confinement or treatment within a public or private institution or unit thereof operated especially for mental or senile patients, or
4. confinement in any institution operated by the U. S. Government or agency thereof, or
5. war or any act of war, or injury sustained or sickness contracted by the Insured Employee while in the military, naval or air force service of any country and any premium paid to the Company for any period not covered by this Policy while the Insured Employee is in such service will be returned pro rata.
[The only other reference to injury or sickness in the entire policy is that set forth under Part IV, “6. Notice and Proof of Claim”:]
Written notice of injury or of sickness upon which claim may be based must be given to the Company within twenty days of the date of the commencement of the first loss for which benefits arising out of each such injury or sickness may be claimed. * * *

. Commencing in 1949, and in order to supplement the “basic medical coverage” •which answered only the needs of ordinary medical care, the insurance industry commenced to provide a “major medical expense” coverage designed to afford a broad protection against the cost of the catastrophic illnesses or injuries to which a relatively small proportion of the insured will be subjected. See Somers and Somers, “Private Health Insurance—Part Two”, 46 Calif.L.Rev. 508 (1958), 527; Pollack, “Major Medical Expense Insurance: An Evaluation,” 47 Am.Jour. of Public Health 382 (1957).

.See: “The comma is used— * * * After each of a series of co-ordinate qualifying words,” U. S. Government Printing Office Style Manual (Abridged, 1959), Section 9.22, p. 135; “In a series of three or more terms with a single conjunction, use a comma after each term except the last”, Strunk and White, The Elements of Style (1959), p. 1; “Words, phrases, and clauses of like construction used in a series, also pairs of words in a series, are separated by commas”, Webster’s New Collegiate Dictionary (2d edition, 1956), p. 1149.

. This comma is optional. See Strunk and White, cited in footnote 2 above.

. See rules set forth in sources more fully cited in Footnote 2: “The comma is used — * * * To set off parenthetic words, phrases, or clauses”, U. S. O.P.O. Style Manual, section 925, p. 135; “Enclose parenthetic expressions between commas”, Strunk and White, p. 2.; “Words, phrases, and clauses that are appositional or parenthetical * * * are set off by a comma or commas”, Webster’s Collegiate Dictionary, p. 1149.

. See, e. g.: “The standard hospitalization and sickness policy provides indemnity for sickness the cause of which originates while the policy is in force and, usually, having its inception 15, 30 or 60 days subsequent to the effective date of the policy contract”, Goldstein, “What is Sickness 1958 Ins.L.J. 773 at 773. See also Annotation, “When sickness deemed to have inception within clause of health or hospital policy covering sickness originating while policy is in force”, 53 A.L.R.2d 686.

. Her total demand of $1,377.54 includes, in addition to this , .ount, penalties and attorney’s fees provided by LSA-R.S. 22:657 for arbitrary refusals of health insurers to pay just policy claims.

 The omitted wording set forth a greater limit of payment and a higher deductible amount applicable to employees earning $12,000 or over annually, and which was inapplicable to the plaintiff herein, who earned less than that amount.