260 So.2d 149 (1972)
James M. SONGE
v.
TENNESSEE LIFE INSURANCE COMPANY.
No. 4911.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
*150 Solomon S. Goldman, New Orleans, for plaintiff-appellant.
Joseph E. Berrigan, Jr., New Orleans, for defendant-appellee.
Before REDMANN, GULOTTA and STOULIG, JJ.
REDMANN, Judge.
Plaintiff insured appeals from a summary judgment in favor of defendant insurer rejecting plaintiff's claim for accidental dismemberment insurance benefits for loss of a foot.
The insurance contract provided a "Weekly Accident Indemnity" stated as:
66 2/3 of Basic Earnings up to a maximum benefit of $1,000 per month. Benefits will be reduced by any amounts payable under Social Security (including benefits payable because of the presence of dependents), Workmen's Compensation or Occupational Disease Act or Law.
The policy's dismemberment rider stipulated the insurer "will pay the indemnity set opposite such loss", including for loss of one foot "a sum equal to the weekly indemnity for * * * 100 weeks."
Plaintiff lost a foot (and suffered other, not specifically compensable injuries) at *151 work, and applied for the indemnity on a written form provided by the insurer. After paying the equivalent of 14 weekly indemnity benefits, the insurer refused further benefits because the plaintiff had received a workmen's compensation settlement in an amount greater than the total amount of the remaining indemnity.
This suit was brought for that remainder (incorrectly calculated) plus 100% penalties and attorneys fees under R.S. 22:657.
Cross motions for summary judgment show there is no dispute of fact but only a question of interpretation of the insurance contract.
The insurer's initial position in its termination letter to plaintiff was that total benefits are reduced by the total amount of workmen's compensation actually received. Counsel now argues that the total payable (even if not received within 100 weeks) is deductible because "any amounts payable" (without limitation as to time) must be deducted. On counsel's reasoning, even the pre-settlement weekly benefits were not due, and the fact of settlement becomes immaterial.
But the only calculable base benefit provided in the entire policy is a weekly indemnity, from which alone workmen's compensation "payable under * * * Law" is deductible. The dismemberment benefits are described in terms of, and are only calculable as, a sum equal to the weekly indemnity for (in case of a foot) 100 weeks.
Accordingly, before any other indemnity can be calculated, the weekly indemnity must first be determined. Its requirement of deduction of "any amounts payable under Social Security * * *, Workmen's Compensation of Occupational Disease Act or Law" can only relate to amounts which are deductible from the 66 2/3% of basic weekly earnings.
If "any amounts payable" requires the total of all compensation ever payable to be deducted, the only benefit against which they are deductible is the weekly indemnity. For example, if the loss of a foot did not totally and permanently disable an insured, he would receive a maximum workmen's compensation benefit (at the time of the loss here) of $45 a week for 125 weeks, R.S. 23:1202 and 23:1221, subd. (4)(g), or a total payable of $5,625. If this total were deducted from the base weekly accident indemnity here of $107.70, the actual weekly indemnity would be $0, and the dismemberment indemnity of "a sum equal to the weekly indemnity for 100 weeks" would also be $0. Under this interpretation, the policy would provide nothing for a job-connected loss of a foot, but would pay $10,770 for the same loss at home: workmen's compensation benefit-entitlement of $5,625 would deprive the employee not of an equal amount but of 100% of the accident insurance benefit.
Some policies, intended to afford only non-industrial accident coverage, may exclude coverage of accidents covered by workmen's compensation laws, but this policy does not purport to do so. To the contrary, by representing its benefits exclusively in terms of weekly indemnity reduced by compensation benefits, it expressly purports to afford coverage to accidents covered by workmen's compensation laws.
(In Allen v. United States F. & G. Co., La.App.1966, 188 So.2d 741, cited by defendant, uninsured motorist coverage principal was reducible by "the amount paid and the present value of all amounts payable * * *", which is not the language here. The case is inapposite.)
Thus, because it would in every case of dismemberment deny rather than afford the purported coverage, we reject the interpretation that "any amounts payable" means the total of all workmen's compensation benefits ever payable. Even if that *152 total were deductible only to the extent not already deducted, the result would be, in our hypothetical example, that for over 50 weeks no weekly indemnity would be payable although the policy expressly promises weekly indemnity.
We also reject as unfounded in the policy the theory that a lump-sum settlement in excess of gross policy liability reduces net liability to zero. Readverting to the policy's weekly indemnity as the exclusive benefit from which comp payments are deductible, we note that if the amount paid (rather than payable) is deductible it can only reduce the weekly indemnity, since the dismemberment benefit is expressed exclusively in terms of that amount. Thus lump-sum settlement could only reduce the weekly indemnity, either for the week of payment alone (as held in Sturgill v. Life Ins. Co. of Ga., Tenn.App.1970, 465 S.W.2d 742, cert, denied), or for that and subsequent weeks. But to allow the subsequent weeks to be reduced (even only to the extent the lump-sum had not already been deducted) would be tantamount to allowing reduction by all amounts ever payable (including those beyond the 100 weeks), which we have above rejected as contrary to the policy's plain promise of an indemnity in industrial accident dismemberment cases.
(Nor, we add, could any agreement between employee and employer to withhold actual payment of comp until after 100 weeks increase defendant insurer's weekly indemnity: it is reducible by amounts payable, not amounts paid.)
There is no justification in the policy terms for any reduction except against weekly indemnity; and we conclude we must interpret this reduction clause to mean that weekly indemnity is reduced by all amounts payable under law during the week or weeks for which weekly indemnity is being calculated. Any other interpretation (except that of Sturgill, supra, which not even plaintiff espouses) perverts a reduction clause into an exclusion of coverage clause, in every industrial accident case of dismemberment.
Although a simple refusal of summary judgment is not appealable, C.C.P. art. 968, plaintiff properly appealed the grant of summary judgment against him. The parties agree there are no factual disputes. We therefore conclude that C.C.P. art. 2164 requires us to render judgment in plaintiff's favor on the principal item of his demand.
On the demand for penalties and attorney's fees under R.S. 22:657, the majority[1] concludes that "just and reasonable *153 grounds, such as would put a reasonable and prudent business man on his guard," did exist in view of the insurer's interpretation of the policy language "any amounts payable under * * * Workmen's Compensation * * * Law." While we disagree with the insurer's interpretation, the majority is unwilling to hold that it was so unreasonable an interpretation that it could not constitute grounds for refusing payment within the meaning of the statute, particularly in view of the trial court's conclusion that it was not only reasonable but correct. They are of the opinion that the Seguin case can be factually distinguished and is therefore not controlling. The majority is of the opinion that in the Seguin case the insurer, acting through its claims manager, after being placed on notice by opposing counsel, failed to make a reasonable inquiry by seeking expert advice in construing its medical coverage and to this extent the misinterpretation of coverage and the resulting refusal of payment was deemed unreasonable. They find no similar factors in the instant matter.
The judgment appealed from is reversed, and there is judgment for James M. Songe against Tennessee Life Insurance Company for $5,392.20 plus legal interest from judicial demand (as prayed) and all costs.
Reversed.
NOTES
[1] The author here notes his dissent on this point. His view is that the insurer's ultimate refusal of payment was unreasonable, irrespective of whether the insurer's initial construction of its policy may have been a reasonable one. (It might be difficult to say the insurer's initial construction was unreasonable, since the trial judge agreed with it: but see Seguin v. Continental Service L. & H. Ins. Co., 1956, 230 La. 533, 89 So.2d 113, where the supreme court reinstated penalties even though a majority of the court of appeal had agreed with the insurer's interpretation of a "hernia" exclusion to exclude "diaphragmatic hernia". And it may be appropriate to point out that the trial judge found "no logic" in insured's construction which we adopt.)

In making that final judgment, the insurer had to know:
(1) Insured's counsel's construction was a reasonable one;
(2) The law requires construction against the insurer and in favor of the insured: thus, of two reasonable interpretations, in the absence of any other determinant factors (and none are shown here), the law requires that the interpretation favoring the insured be adopted.
Because of the law of construction, it appears to me that in construction cases the key to penalty imposition is not whether the insurer's initial interpretation is reasonable, but whether the insured's interpretation (communicated to the insurer) is, on its face, a reasonable one.
The only way the insurer could have hoped to escape liability here was on the theory that the insured's construction was either an unreasonable one, or one so clearly less reasonable than its own as to be the equivalent of unreasonable. In my judgment the insured could not reasonably so characterize insured's construction.
While I would not object to a rule of law holding that a lower court's agreement with an insurer's construction was sufficient reason to prevent imposition of penalties, I understand the rule of Seguin, supra, to be to the contrary. Seguin would preserve the insurer's right to a judicial determination of its policy's meaning without threat of penalty, only if the insurer promptly brought the suit (instead of merely "closing its file" as here, which Seguin indicates that, in policy interpretation cases, it does at the risk of subjecting itself to penalties; see also Niles v. American Bankers Ins. Co., La.App. 1969, 229 So.2d 435, writ refused 255 La. 479, 231 So.2d 394).