294 So.2d 200 (1974)
Calvin L. MARTIN
v.
AMERICAN BENEFIT LIFE INSURANCE COMPANY.
No. 54071.
Supreme Court of Louisiana.
April 29, 1974.
*201 Joshua A. Tilton, Baton Rouge, for plaintiff-applicant.
James H. Leveque, III, Garrett, Carl & Roussel, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Defendant American Benefit Life Insurance Company issued its policy insuring Calvin L. Martin, the plaintiff, "against loss ... resulting from bodily injuries effected solely, directly and independently of all other causes through EXTERNAL VIOLENT AND ACCIDENTAL MEANS, which ... shall not be caused wholly or in part, directly or indirectly by any disease, defect or infirmity...." The pertinent exception to coverage provided "This certificate does not cover ... disability ... caused or contributed to directly or indirectly, wholly or partly: (1) By disease in any form...."
While the policy was in force and effect, Martin was a passenger in a taxi which was involved in an accident on October 25, 1970. As a result Martin received injuries and was brought to the hospital in an ambulance. He was examined at that time in the emergency room by Dr. Mathieu who found him to be "complaining of some chest pain" because of his involvement in the accident. A chest x-ray at the time disclosed no injury to the lung or heart. Examination did disclose a minor contusion in the left chest area. Dr. Mathieu instructed Martin to return on February 8, 1971.
In the meantime, according to Martin's testimony, he remained in bed, in pain, for the injuries he received in the accident to his left arm, knee and the left side of his chest. His testimony was supported to some extent by a neighbor who saw him in bed with a badly swollen leg and knee.
On February 8, 1971 Martin was seen by Dr. Mathew Thomas, with whom Dr. Mathieu was associated. At that time, according to Martin, the left knee was painful on motion, such as walking or bending. It was a "moderate local tenderness", the doctor said. X-rays taken at this time "revealed no evidence of fracture or dislocation." In the doctor's opinion "he had a traumatic type of contusion or strain to this area with some overlying, due to some underlying arthritic problem which he had also." Medication was recommended and Martin was instructed to return in several weeks.
Doctor Thomas saw Martin again on February 22, 1971. At this time the knee was still painful, and there was moderate tenderness to touch on the lateral side. Injection of steroid cortisone type compound and local antiseptic was administered. On March 18 when Martin returned for another visit to the doctor, he was still talking of some discomfort, but there was improvement. There was slight tenderness and the knee was again injected, and arthritic medication was prescribed. April 8 was Martin's final visit to the doctor. There was then less pain in the left leg; however, on this occasion Martin complained of pain in his right leg *202 which the doctor diagnosed as an arthritic condition similar to that being experienced by the patient in the left leg. Arthritic medication was prescribed for that complaint.
Under cross-examination Dr. Thomas stated that it was a reasonable conclusion that the trauma sustained by Martin on the 25th of October aggravated a pre-existing arthritic condition. He could not say, however, how long Martin was disabled after the last visit on April 8, though he did say it was "possible" that he could have been disabled until February 1972, though his opinion was "not a realistic judgment" because he had not seen Martin after April 8. And extending the disability to February 1972 seemed "a little prolonged for this particular type injury." Martin's age, he was 66, and underlying arthritic condition would "probably" prohibit him from carrying on his usual activities "to some extent" according to the doctor.
The only other testimony in the record (the defendant offered none) concerning Martin's claimed disability from October 25, 1970 to February 1972 is the testimony of Martin and the neighbor who saw him once or twice a week. This evidence is to the effect that prior to the accident Martin was the owner of a passenger bus line which he operated with the help of other drivers in rural Terrebonne Parish. After the accident his pain and discomfort was such that he never drove a bus again, and, in time, he sold his bus line and is no longer active in business. He testified he can no longer bend or stoop and his activity is limited to very light exertion. We mention this uncontradicted evidence to support what we feel was a genuine complaint of injury to the knee. Without this circumstance, the evidence that the trauma to the knee was the cause of his disability or "loss" under the policy would not preponderate to that legal certainty the law requires.
This state of the facts leaves us with the problem of determining whether, under the terms of the policy, the accident and trauma to the knee was the independent cause of disability, or whether the disability was caused by the arthritis.
Most recently in Moore v. The Prudential Insurance Company of America, 278 So.2d 481 (La.1973), we considered the effect of a pre-existing physical condition on the right of recovery under an accident policy where the contest by the insurer is on the ground that the insured was, at the time of the accident, already afflicted with a disease or infirmity. We said there that the authorities generally agree that the insurer is liable if an accident is the proximate cause of the death or disability. And we recognized the difficulty which is presented when the insured was afflicted with a pre-existing disease at the time of the accident.
The rule to be applied in such cases was stated to be that if there is a pre-existing disorder or illness at the time an injury is received, recovery may be had if the injury is severe enough to have caused considerable damage and if the disease was not the proximate cause or principal cause of the disability. See also Thibodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423 (1959), and the numerous authorities cited there.
On the record before us, the only medical testimony concludes that it was reasonable to say that the trauma of the accident aggravated the arthritic condition in such a manner that the disability claimed resulted. From this we conclude that although Martin did have an underlying arthritic condition, left to itself it would have remained nondisabling in such a way that he could have continued with his bus business. Only because of the trauma did the arthritis manifest itself to such an extent that it became disabling, a source of pain and trouble. Dormant, as it was at the time of the accident, it was not disabling, and, so far as we know, it may never have become disabling without this accident.
*203 Strictly speaking, any departure from the ideal of normalcy is either a "disease, defect or infirmity". But we cannot accept the proposition that these policies only cover the insured who is strong and perfectly healthy. Few, if any, insured would recover under this standard. These policies must be read so that "disease, defect and infirmity" is understood in the common speech of men. "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." Bird v. St. Paul Fire and Marine Insurance Co., 224 N.Y. 47, 120 N.E. 86 (1918).
In this case the arthritic condition was perhaps a potential source of trouble to this insured, but from this record it would not have brought about this disability at this time without the trauma suffered in the accident. On October 25 it was not a disease or defect within the terms of the policy, but merely a predisposing tendency. It would be different in a case where an ordinary act of everyday activity brought about a condition of disability because of an existing latent or dormant condition. No recovery would be allowed there. But here there was an accident, a catastrophe of unusual dimensions, an automobile collision in which the vehicle Martin was riding was totally destroyed and in which several persons were injuredMartin requiring an ambulance to bring him to the hospital.
The difficulty of defining and segregating causes in a precise and scientific manner under these circumstances is virtually impossible. We are only able to seek to ascertain what would be a reasonable interpretation of the intention of both parties. On this basis, we find the disability to be due to the trauma of the accident within the meaning of the policy, Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N.E. 914 (1930).
The Court of Appeal denied all recovery; its decision is therefore reversed. The trial judge granted recovery and also allowed penalties and attorneys' fees finding no "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard," La.R.S. 22:657, which would warrant the refusal of defendant to pay this claim. It is evident from our discussion that this case fully justified defendant's insistence upon a judicial determination of the question presented. The penalties and attorneys' fees are therefore denied. The judgment of the trial court is otherwise affirmed.
For the reasons assigned, there is judgment in favor of plaintiff Calvin L. Martin and against defendant American Benefit Life Insurance Company, in the principal amount of $1,000, together with attorneys' fees for expense in connection with a deposition in the amount of $250, with legal interest on both amounts from date of judicial demand until paid; the medical expert fee of $100 to be taxed as cost. Defendant to pay all costs.
TATE, J., dissents in part and assigns reasons.
DIXON, J., concurs in part and dissents in part with reasons.
TATE, Justice (dissenting).
I respectfully dissent from the majority opinion insofar as it disallows penalties and attorneys' fees for non-payment of the benefits due under this health and accident policy, La.R.S. 22:657.
The jurisprudence recognizes that, where an insurer refuses to pay benefits based on an ambiguous provision of its own policy or a misinterpretation thereof, the insurer is liable for penalties for arbitrary non-payment, especially since the insurer itself prepared the policy the coverage of which is now questioned. Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1966); Niles v. American Bankers Ins. Co., 229 So.2d 435 (La. App.3rd Cir. 1969), certiorari denied, 255 La. 479, 231 So.2d 394 (1970). As Seguin noted, the penalties may be due in spite of *204 a previous court in the same case having agreed with the insurer's misinterpretation. In the present case, the insurer could not rely upon any Louisiana jurisprudence, in my opinion, in support of its misinterpretation, at any rate following our decision in Thibodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423 (1969).
As the trial court noted in awarding penalties, they were due under La.R.S. 22:657, "particularly in the absence of any testimony on behalf of defendant in support of any liability towards" the plaintiff.
For these reasons, I respectfully dissent insofar as penalties were disallowed, but I do concur in the essential holding and the well-reasoned articulation of the majority opinion holding that there was coverage under the policy.
DIXON, Justice (concurring).
I concur in the majority opinion, except that I would reinstate the judgment of the district court awarding penalties and attorneys' fees.