SUMMERS, Justice.
Plaintiff Lawrence A. Fabacher brought this suit against defendant Coastal States Life Insurance Company to recover medical and hospital expenses, penalties and attorneys’ fees under a group health and accident policy issued by defendant. The policy insured the members of the Calcasieu Parish Police Jury and parish employees and covered loss of life, accidental death, loss of time, hospital, medical and surgical expense and related risks.
Judgment was rendered in the trial court in plaintiff’s favor awarding the medical and hospital expenses claimed. Penalties and attorneys’ fees were also awarded in accordance with Section 657 of Title 22 of *855 the Revised Statutes of Louisiana.[1] On appeal to the Third Circuit, the judgment was affirmed. We granted writs to review the Court of Appeal judgment, limiting review to the issue of penalties.
At times which are pertinent, plaintiff was a duly elected member of the Police Jury of Calcasieu Parish. As such he was entitled to receive per diem for 76 days each year, allocated to meetings attended and for days devoted to road inspections. Per diqm received for these days was payable upon the warrant or requisition of each police jury member. Other than meeting days, the individual members of the police jury were at liberty to designate the days when per diem was due. This was done, according to the practice in Calcasieu Parish, at the end of each year.
Plaintiff had been employed for some time by Continental Oil Company as a watchman on a part time basis. On June 22, 1966 he worked for Continental until about 3 o’clock. He was not working for Continental on June 23, and, as was his habit, he drove to the Ward Four barn, inspecting a parish road enroute. Upon arrival at the barn he greeted the men employed by the parish and inquired about the progress of the work. Plaintiff then engaged in a number of telephone conversations relating to a fund raising drive being conducted to assist two local children, one with leukemia and another who was to undergo open heart surgery in Houston.
It was about 11:30 that morning while on his way to the courthouse, driving his pick-up truck toward Lake Charles, that plaintiff became involved in a head-on collision with another automobile and, as a result, suffered severe injuries. He was hospitalized and received extensive medical care and treatment. Charges for doctors, hospitals, drugs and related services totaled *857 $1,706.99. These charges are not disputed. The controversy arose over the coverage under the terms of the policy.
However, since we have limited this review to the issue of penalties, the question of coverage is no longer involved. The issue before us is whether, under Section 6S7 of Title 22 of the Revised Statutes and the facts and circumstances, the defendant had “just and reasonable grounds, such as would put a reasonable and prudent business man on his guard,” to warrant its refusal to pay plaintiff’s claim within thirty days as the statute requires. Resolution of the issue involves a consideration of certain exclusion clauses in the group accident and health policy written by defendant insuring the members of the police jury and employees of the parish.
First, the policy excluded coverage on account of disability where it is
“(1) Disability due to bodily injury arising during, from, or out of, or in the course of, employment, or during performance of any occupation for compensation or profit, whether or not covered by any Workmen’s Compensation act or similar law, * * * ”
Under other policy sections a similar exclusion is found, reading as follows:
“Exceptions and Limitations.
# * * * * *
(e) For any confinement for bodily injury arising during, from, or out of, or in the course of, employment, or during the performance of any occupation for compensation or profit, whether or not covered by any Workmen’s Compensation act or similar law.”
The application for insurance signed on behalf of the Calcasieu Parish Police Jury contained a negative reply to the question: “Do you wish occupational coverage ?” Thus, in addition to the terms of the policy excluding such coverage, there was no intention that the insurance in question would cover the employees of the parish or members of the police jury while engaged in their respective employments or occupations for compensation. In effect, an adjustment in the rates was bargained for by the application, the nonoccupational premium being about 10 percent lower.
On August 18, 1966 the defendant insurer first learned of plaintiff’s claims for disability benefits under the policy, and on the basis of plaintiff’s signed claim paid $200 as disability benefits for the eight-week period June 24, 1966 through August IS, 1966. Plaintiff’s claim was accompanied by the employer’s claim form and the report of the physician who admitted him to St. Patrick’s Hospital. Later the insurer learned that this $200 payment had been *859 made in error when it was discovered that the physician’s report disclosed plaintiff’s condition was due to an injury arising out of his employment.
A claim for hospitalization was received thereafter on September 6, 1966 from St. Patrick’s Plospital in Lake Charles. At the same time Dr. John D. Jackson, the attending physician at Ochsner’s Clinic; the radiologist at Lake Charles; and Dr. Gerald N. Weiss, the attending physician at St. Patrick’s Hospital, all submitted reports and statements. Of this group, only Dr. Weiss’ report referred to plaintiff’s employment at the time of the injury. According to his report the injury did not arise out of plaintiff’s employment.
The data contained in the report of St. Patrick’s Hospital included a notation that the plaintiff had other insurance with American Income Life Insurance Company. This information posed the question of the applicability of the pro rata clause in defendant’s policy and whether the hospital and medical expenses incurred should be paid in full or proportionately with American Income- Life. Defendant, therefore, set this claim aside and delayed normal processing in order that it might verify the existence of the additional insurance and determine its effect upon its obligations under the pro rata clause of its policy.
Shortly thereafter, on September 22, 1966, the defendant received another physician’s statement prepared by Dr. George p. Schneider. This statement also contained a notation that plaintiff’s injury arose out of his employment. With this information before it, defendant immediately ordered an investigation to determine the reliability of the information it had received that the insured had other insurance with American Income Life. The investigation was also undertaken to ascertain whether still other insurance existed covering plaintiff’s injuries.
The investigative report, received on September 26, 1966, disclosed that plaintiff was employed by Continental Oil Company and was driving a company truck when the accident occurred on June 23, 1966. It also concluded that, because of his part-time employment status, plaintiff was not eligible to participate in the group insurance program of Continental Oil Company written by Travelers Insurance Company.
Then on September 28, 1966, defendant, inferring from this report that Travelers insured Continental for other risks, inquired of Travelers by letter whether a workmen’s compensation claim had been filed with them by plaintiff. No reply was received to this letter until November 28, 1966, which was about one week after suit was filed.
In the meantime, however, the parish insurance clerk wrote to defendant on September 29 inquiring about the disability *861 benefits due plaintiff and whether payment was forthcoming on the hospital and medical items submitted. In reply, defendant’s claims manager sent her a copy of his letter to Travelers. The manager testified that he felt the letter was self-explanatory and obviously conveyed the idea that defendant believed plaintiff was employed by Continental at the time of the injury and defendant was, therefore, in an effort to verify this fact, making an appropriate investigation to ascertain if a claim for compensation was being made.
On October 7, the parish insurance clerk again wrote to defendant’s claim manager informing him that plaintiff was not covered by Continental’s group policy and Travelers’ only connection with the case was as liability insurer of the automobile which collided with plaintiff. Defendant’s claims manager then advised the insurance clerk that two of the claim forms submitted in connection with plaintiff’s case indicated that plaintiff’s was an occupational injury, and, under the circumstance, it was necessary to hold the claim in abeyance until their investigation was completed.
Plaintiff then filed suit and shortly thereafter Travelers replied to the letter stating it did not carry workmen’s compensation insurance for Continental.
To add to the confusion attending this claim, no one knew until December, when plaintiff submitted his claim for per diem, whether he would claim per diem for June 23, the day of his injury, as a day devoted to road inspections. In view of the broad discretion granted to police jury members in designating the days for which per diem is payable, if June 23 had been designated as such a day plaintiff would have been engaged in “employment” under the terms of the exclusion clause of the policy and his claim would have been invalid.
Of course, as the record discloses, plaintiff did not designate June 23 as a day for which per diem was payable, and his road inspections and activities at the Ward Four barn on that day, though bearing strong indicia of employment activity, were gratuitously performed as a public service. It is not difficult to understand, therefore, why the insurer was confused and unable to determine whether plaintiff was employed for compensation.
The existence of the pro rata clause in the policy and the report of other insurance; the fact of plaintiff’s part-time employment with Continental and his part-time employment for compensation with the police jury; the fact that he worked for Continental the day before his injury and did perform functions which could have been a basis for a per diem claim with the police jury on the day of the injury; the understandable confusion brought about by conflicting reports from different sources, two of which definitely advised that plain *863 tiff’s injuries arose out of his employment, and another which implied as much, all satisfy us that just and reasonable grounds, such as would put a reasonable business man on his guard, existed to justify defendant’s refusal to pay the claim timely.
Our problem here is essentially a question of fact which we have resolved from the record in favor of defendant and against invoking the harsh penal provisions of Section 657. Picard v. Mutual Life Ins. Co. of New York, 212 La. 234, 31 So.2d 783 (1947); Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61 (1943) and Turner v. Metropolitan Life Ins. Co., 189 La. 342, 179 So. 448 (1938).
For the reasons assigned, the judgment of the Court of Appeal is amended to deny any award for penalties or attorneys’ fees.

. La.B.S. 22:657 provides:
“A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment . at least, every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to. try such cases.
“B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the. insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without *857 just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt 'of due proof of death by the insurer until paid. As amended Acts 1960, No. 287, § 1.”