SAMUEL, Judge.
Plaintiff filed this suit against Bunge Corporation, The Fidelity & Casualty Company of New York (public liability and workmen’s compensation insurer of Bunge) and Pan-American Life Insurance Company seeking recovery for disability resulting from a condition his petition describes as allergic bronchitis and asthmatic seizures which he alleges began during the time he was employed by Bunge. The action primarily is one for damages in tort against Bunge and Fidelity; alternatively, recovery is sought against those two defendants in workmen’s compensation; and in the further alternative, recovery is sought against Pan-American under a group health and accident policy in which plaintiff was an insured as a Bunge employee. Plaintiff also prayed for penalties and attorney’s fees. After trial there was judgment in favor of the three defendants and against the plaintiff, rejecting all of his demands. Plaintiff has appealed.
The record establishes the following facts': Plaintiff was employed as a laborer by Bunge from September 14, 1961 to January 3, 1963. Bunge operates a grain elevator at Destrehan, Louisiana, and during the course of plaintiff’s employment, in and around the plant itself and in the process of unloading barges, he was exposed to an excessive amount of grain dust. Prior to his employment by Bunge plaintiff had not been troubled with any respiratory ailments and had worked at various other jobs, doing heavy labor without difficulty. Shortly after he started working for Bunge he began having respiratory troubles which became progressively more severe. He sought medical help for these troubles on many occasions and was incapacitated and unable to work for short periods of time until each episode of respiratory distress subsided as a result of medical treatment. Because of his condition he is unable to work in areas where he will be exposed to excessive amounts of dust. According to his testimony and the testimony of some of his witnesses, he is now also unable to do the usual work required of a common laborer.
The record contains the testimony of three medical experts: Dr. M. O. Weil-baecher, a general practitioner who was a treating physician; Dr. John H. Seabury, a specialist in internal medicine with a sub-specialty in diseases of the chest, who examined plaintiff on January 27, 1965; and Dr. Stanley Cohen, an internist specializing in allergy, who examined plaintiff and made various tests relative to allergies on December 2, 1963. Drs. Weilbaecher and Seabury were plaintiff witnesses and Dr. Cohen was a defense witness.
The testimony of the three doctors is essentially noncontradictory. All agreed that plaintiff’s condition was subject to being aggravated by many factors, including weather conditions, and that the excessive grain dust to which he was exposed while working for Bunge aggravated his respiratory ailment. With reference to that ailment Dr. Weilbaecher stated plaintiff’s *147 symptoms were comparable with asthmatic bronchitis, Dr. Seabury referred to the condition as bronchial asthma, and Dr. Cohen referred to it as allergic bronchial asthma. Drs. Weilbaecher and Seabury testified they could not say plaintiff’s respiratory difficulty was caused by the grain dust to which he was exposed as a result of his employment by Bunge. Dr. Cohen tested plaintiff with various allergens, including specifically all of the types of dust to which he had been exposed at Bunge (such as wheat, rye, soybean, oats, corn, etc.), and obtained a positive reaction only with house dust, an allergen found in many places including homes. Dr. Cohen concluded that because of the absence of sensitivity to the grain dust and because of the continuance of plaintiff’s symptoms after having left Bunge’s employment for approximately one year (if the respiratory condition was caused by the grain dust, those symptoms would be expected to disappear after an absence of exposure for that period of time), plaintiff’s condition was not occupational, i. e., there was no direct causal relationship between his employment and his allergic bronchial asthma.
Because Dr. Cohen’s specialty is particularly in the medical field involved in the issue presented, and as that doctor made appropriate tests which were not made by the other two doctors, we accept the testimony of Dr. Cohen, as also did the trial judge.
Plaintiff’s claim in tort against Bunge and Fidelity is based on LSA-R.S. 23:13 relative to an employer’s duty as to the employee’s safety, and the contention that Bunge violated its obligations under that statute in that Bunge: (1) failed to have plaintiff physically examined prior to his employment in order to determine if he had a condition which would be aggravated by exposure to the excessive dust; and (2) failed to promptly supply plaintiff with a needed safety device, a face mask or respirator, and when one was supplied, did not instruct plaintiff in its proper use. With regard to this contention the trial judge found nothing in the evidence establishing that Bunge had been so guilty of violating a standard of care toward plaintiff as to support his claim in tort. We agree with that finding.
LSA-R.S. 23:13 reads:
“Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations.” LSA-R.S. 23:13.
In addition to the fact that counsel for plaintiff has cited no authority for the proposition that Bunge was obligated by the statute to have plaintiff medically examined prior to his employment, there is nothing in the record which indicates that such an examination would have revealed a respiratory condition which would be aggravated by the grain dust. The only evidence on that subject indicates the contrary. Dr. Weilbaecher testified that several years prior to his employment by Bunge, Dr. M. K. Gaupp, with whom Dr. Weil-baecher was associated and who also treated plaintiff, had given plaintiff a pre-em-ployment physical examination which revealed no evidence of any respiratory ailment and Dr. Gaupp also had found plaintiff’s chest clear after an examination in September, 1961. Insofar as the face mask or respirator is concerned, we are satisfied from the record that plaintiff was furnished with a respirator within approximately one week after he began employ *148 ment with Bunge and there is no evidence that the device was defective in any way or that plaintiff ever made any complaint about it. Furthermore, he apparently had no trouble using the respirator; according to his own testimony, he simply followed the instructions printed on the box in which it was contained.
Plaintiff’s claim for workmen’s compensation against Bunge and Fidelity is based on LSA-R.S. 23:1031.1 relative to occupational diseases under the workmen’s compensation act. Under Section A of the statute an employee “* * * who is disabled because of the contraction of an occupational disease as herein defined * * * ” is entitled to workmen’s compensation to the same extent as if he had received personal injury by accident arising out of and in the course of his employment. The first sentence of Section B of the statute reads: “An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature pf the work performed.” The statute lists several diseases as occupational and also designates as occupational poisoning by, or other disease resulting from, contract with certain named chemical compounds.
In the instant case plaintiff does not claim he is disabled as a result of coming in contact with any of the chemical compounds listed in the statute. We note that plaintiff apparently cannot recover under the statute because it does not list asthma or bronchial asthma as an occupational disease for which an employee may recover workmen’s compensation even if causally connected with his employment. Jones v. United States Fidelity & Guaranty Co., La.App., 148 So.2d 309; see also Hicks v. Liberty Mutual Insurance Company, La.App., 165 So.2d 51.
However, we do not reach the question of whether or not the disease for which plaintiff seeks compensation is one of the occupational diseases listed under LSA-R.S. 23:1031.1. Here, as we have already pointed out, there was no direct causal relationship between plaintiff’s employment at Bunge and his bronchial asthma; the bronchial asthma was not contracted by him in the course of his employment with Bunge; and under the first sentence of Section B, which we have quoted above, such contraction initially is necessary for any recovery under the statute.
We now address ourselves to plaintiff’s claim against Pan-American for benefits under the latter’s group health and accident policy. The policy provides for the payment of specified weekly benefits in the amount of 70% of basic weekly earnings up to $51.00 “* * * for the period during which the employee is wholly and continuously disabled as a result of nonoccupational bodily injury through accidental means or nonoccupational sickness, and is thereby wholly and continuously prevented from performing any and every duty pertaining to his employment, provided the disability begins during the continuance of this Policy and while the employee is insured hereunder.” Benefits for sickness are payable for a maximum of thirteen weeks while the employee is under the direct care of a physician licensed to practice medicine. Sickness covered by a workmen’s compensation law or other similar legislation is specifically excluded. The policy defines “any one period of disability” as used therein to include all periods of disability, due to the same or related cause or causes, which occur prior to complete recovery unless such periods are separated by a return to work for at least three months.
In the instant case, as we have already determined, plaintiff’s asthmatic condition was not occupational; it was not caused, it was only aggravated, by the dust he was subjected to while employed by Bunge, and it could have been aggravated by many other factors. The record established to our satisfaction that there was *149 only “one period of disability” as defined by the policy; for during the course of his employment plaintiff always returned to work in less than three months. We conclude that plaintiff is entitled to a recovery of policy benefits against Pan-American. We also conclude that Pan-American is not liable for a penalty and attorney’s fees under the applicable statute, LSA-R.S. 22:657. The statute provides for a penalty and attorney’s fees for failure to pay claims within a specified time “* * * unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.” That such just and reasonable grounds for Pan-American’s refusal to make benefit payments exist in the instant case is shown by the fact that the trial court itself was of the opinion that plaintiff was not entitled to any benefits under the policy.
From the record as it now stands we are unable to determine the exact amount of benefits to which plaintiff is entitled. Perhaps understandably because of the greater amount of attention given to the much larger claims against Bunge and Fidelity, the record is not clear regarding the exact times plaintiff was disabled from working as a result of his asthmatic condition or the amount of his salary during those periods. Accordingly, to the extent of plaintiff’s claim against Pan-American, we will remand the case for a determination of the exact amount of benefits due by that defendant to the plaintiff.
For the reasons assigned, that portion of the judgment appealed from which rejects the claim of plaintiff-appellant against Pan-American Life Insurance Company for benefits under the latter’s group policy of insurance is annulled and set aside and, only insofar as that claim is concerned, the matter is remanded to the trial court solely for the purpose of determining, and awarding judgment for, the amount of insurance benefits due by Pan-American Life Insurance Company to plaintiff-appellant, all in accordance with the views herein expressed. In all other respects the judgment appealed from is affirmed; costs of this appeal and costs of the trial on remand to be paid by Pan-American Life Insurance Company.
Affirmed in part; annulled and set aside in part; remanded in part.