272 So.2d 37 (1973)
John J. CASWELL
v.
RESERVE NATIONAL INSURANCE COMPANY.
No. 5061.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
*38 Thomas Barr, III, New Orleans, for plaintiff-appellee.
*39 Adams & Reese and Robert A. Vosbein, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
This action was brought by plaintiff against defendant insurer for benefits allegedly due him under a health and accident insurance policy as well as damages, penalties and attorneys' fees.
The policy sued upon was originally issued by American Physicians Insurance Company to the plaintiff on February 22, 1960. In November, 1964, defendant, Reserve National Life Insurance Company, assumed all liability under the contract of insurance owned by the plaintiff. On April 8, 1965, plaintiff suffered a heart attack and in due course after making claim under the policy he received the benefits to which he was entitled. On February 9, 1966, defendant advised plaintiff that it would renew plaintiff's policy provided he accepted a rider which would eliminate all benefits for heart and circulatory system disease.
Plaintiff then tendered his premium to defendant and insisted that this policy be renewed as it was originally written. Plaintiff's premium was returned and after a series of correspondence between the parties he filed this suit claiming benefits under the policy for illnesses suffered by him and in the amounts specified in the policy as though it were in full force and effect, notwithstanding defendant's refusal to renew the policy in its original form.
It is, and at all times since February, 1966, has been the position of the defendant that the policy was renewable at the option of the company, and therefore the company had the legal right to offer a renewal with the elimination rider. Plaintiff has contended that this option was not available to defendant for the reason that the language providing for the option is not in such place in the policy and in such form so as to comply with LSA-R.S. 22:212(8) which provides:
"(8) In any case where the policy is subject to cancellation or renewal at the option of the insurer, there shall be prominently printed on the first page of such policy a statement so informing the policyholder."
Defendant has insisted that the language was on the first page of the policy and in other respects was in compliance with the insurance code.
The policy in question is a booklet consisting of a cover, 12 printed pages and some special forms stapled to the back cover. The printed pages are numbered with the first page designated as Page 1. This page begins with the words "This is your policy" and after some five printed paragraphs contains the following:
"Insured: JOHN J. CASWELL
Policy No. E-F-D-V2-60-2-571
Premium:
 1 Mo. 8.80 3 Mos. 25.34 6 Mos. 50.60 12
 Mos. 99.00
Issue Date 2-22-60"
Page 2 of the policy contains questions and answers which provide information concerning the company and the policy to the policy holder.
Page 3 of the policy begins with the words "FORM EPHYSICIANS PREFERRED HOSPITAL POLICY. This policy provides payment for expense incurred due to surgical operations and hospital confinement resulting from accidental bodily injury, sickness or childbirth, as herein limited and provided. American Physicians Insurance Company of Baton Rouge, Louisiana."
There follows "Part One" of the policy which begins with a long insuring paragraph and which is followed on the bottom of Page 3 with the sentence "This policy is renewable at the option of the Insured and the Company."
*40 The case was tried to a jury on six interrogatories which are as follows together with the jury's verdict as to each:

"1.
Did the Defendant, Reserve National Insurance Company, have the right to refuse to renew Plaintiff's policy considering whether the statuary (sic.) language was or was not printed on the first page of the policy?
 Yes _______ No x 
 (If the answer to No. 1 is yes, No. 2, 3, 4,
 5 and 6 need not be answered)

2.
If the Insurance Company did not have the right to refuse to renew the policy, did the Plaintiff, John J. Caswell, suffer any damages?
 Yes x No _______

3.
If answer to No. 2 is `yes'How much damages,
$1,000.00

4.
If the Insurance Company did not have the right to refuse to renew the policy, how much is the amount of the health and accident benefits which are due under the terms of the policy
 $500.00

5.
If the Insurance Company did not have the right to refuse to renew the policy, do you find that they had just and reasonable grounds, such as would put a reasonable and prudent business man on his guard for such action; that is, did they act reasonable?
 Yes _______ No x 
 (If the answer to No. 5 is `yes'No. 6 need
 not be answered)

6.
If the answer to No. 5 is `No'Is the plaintiff entitled to attorney fees?
 Yes x No _______"
From this judgment the defendant has appealed, specifying seven errors for this Court's consideration.
The first two specifications of error are related and can be considered together in the formulation of this opinion. Appellant maintains that the jury verdict, finding that the defendant did not have the right to refuse to renew the policy, was contrary to the law and evidence and that the trial court erred in refusing to direct the jury that the policy conformed to Louisiana law as a matter of law. At the trial of the case there was made available to the jury the booklet which formed the policy sued upon and which had already been described herein. Likewise, there was made available to the jury the plain wording of LSA-R.S. 22:212(8) quoted above.
The question of whether page 3 of the policy is really the first page for purposes of compliance with the quoted statute was treated by the trial judge as a question of fact to be resolved by the jury. This was done in favor of the plaintiff. While we do not believe that this was properly handled as a fact question for the jury to decide, nevertheless the result is the same whether treated as a question of law or fact.
Appellant urges that neither pages 1 nor 2 of the policy qualifies as the first page because they contain nothing more than advertising or promotional information with the substance of the policy actually beginning on page 3, by means of pages 3 through 10 being inserted into the covers and the sheets which form pages 1 and 2 and 11 and 12. Appellee correctly points out, however, that there are contained on page 1 elements which are required to be included in an insurance policy by LSA-R.S. 22:624, including the name of the insured, the policy number, the premium schedule, and the issue date, elements which do not appear anywhere else in the policy. The presence of this information on page 1 would certainly compel a conclusion that this is indeed the first page of the policy within the meaning of R.S. 22:212(8). Furthermore, the purpose of the statute is to alert and adequately inform persons purchasing the policy that the issuer has the option to refuse to renew the policy. The required language printed in the body of another paragraph at the bottom of the third page in ordinary print does not fulfill this purpose.
Therefore, we hold that as a matter of law the requirements of the statute were not complied with in that the page on *41 which the caveat was inserted was not the first page of the policy as was required.
The next specification of error relied upon by appellant is in connection with the Court's refusal to allow an attorney for the Insurance Commissioner of the State of Louisiana to give his opinion to the jury as to whether the policy in question conformed with Louisiana law. Whether this was a correct evidentiary ruling on the part of the trial judge or not it would not change the result in this Court since we have already held that the policy did not, as a matter of law, comply with the requirements of the Louisiana Insurance Code.
Included in the jury verdict were damages in the amount of $1,000. Appellant specifies error in that this award is contrary to the law and evidence and alternatively excessive. This item of damage was returned in the verdict in response to the second and third interrogatories.
In considering this specification of error, both parties have agreed that only LSA-L.C.C. 1934(3) would provide a legal basis for any award to the plaintiff for general damages resulting from defendant's breach of its contract. The question is therefore reduced to the correct legal interpretation of that article and whether it does support such an award in the circumstances present in this case.
The pertinent sub-paragraph reads as follows:
"Although the general rule is, that damages are the amount of the loss a creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."
In answer to appellant's argument that this article clearly precludes recovery to the plaintiff in this case for general damages other than the benefits under the policy, appellee argues that the primary motive for purchasing health and accident insurance is freedom from the uncertainty and worry concerning the high cost of medical care which appellee equates with the intellectual enjoyment discussed in the article. Appellee speculates that when this policy was sold he was undoubtedly given the "sales pitch" that he would have peace of mind knowing that his medical bills would be covered. However, the record is devoid of any evidence that such was a consideration at the time this particular contract was entered into. An equally persuasive argument can be advanced that the real object of this contract was simply to receive cash benefits which would assist in the payment of medical bills if and when sickness or accident arose.
Appellee relies upon two cases in support of his contention that Article 1934 (3) entitles him to this award for general damages, Mitchell v. Shreveport Laundries, Inc., La.App., 61 So.2d 539, and Lewis v. Holmes, 109 La. 1030, 34 So. 66. A reading of these cases readily reveals that they are not controlling on the instant case and can easily be distinguished. In the first cited case, a groom's wedding suit was lost by the laundry and he was then relegated to being married in a soiled suit of clothes. The opinion reveals that at the time the suit of clothes was brought to the cleaner he was given assurances that his suit would be ready for his wedding day. Obviously, the timely cleaning of his suit was the object of the contract and not the *42 price of the cleaning or the value of the suit itself.
In the case of Lewis v. Holmes, a bride's trousseau was not ready in time for her wedding despite the fact that she had been assured of timely performance by the merchant. The timeliness of the delivery was the object of this contract as opposed to the value of the dresses themselves.
In the instant case, there is no evidence in the record to show that the plaintiff purchased this contract of health and accident insurance for the purpose of his peace of mind at the time the contract was made and consequently we do not find that the object of this particular contract was the gratification of any intellectual enjoyment on behalf of the plaintiff. The object of this contract was payment of money upon sickness or accident, and any other motivation such as peace of mind was incidental to this object. Consequently, the jury's verdict must be amended insofar as it includes damages for mental anguish or general damages.
In response to the fourth interrogatory the jury awarded to plaintiff the sum of $500 for the benefits supposedly due under his insurance contract with the defendant. The record is confused to some extent as to how the benefits were to be computed but the only testimony on the subject came from Mr. Pat Moore, the president and founder of the defendant company, who considered the various elements of plaintiff's claim in comparison with the provisions of the policy and concluded that the correct amount of plaintiff's claim would be $312.30. The decision of the jury in awarding these benefits must be based on evidence in the record. Since there is no evidence to support any figure but $312.30 the jury verdict must be amended insofar as it awarded the sum of $500 of benefits to the plaintiff.
Finally, appellant has specified error in the jury's award for penalties and attorneys' fees.
LSA-R.S. 22:657 provides as follows:
"All claims arising under the terms of health and accident contracts issued in this state shall be paid not more than thirty (30) days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist ...."
Defendant called as its witness the attorney for the Commissioner of Insurance who testified that the form of the policy was accepted by that office with specific reference to the location in the policy of the caveat regarding renewability at the option of the company. Defendant argues that its reliance on the office of the Commissioner of Insurance constituted "just and reasonable grounds" to take the position that the policy was in compliance with the law and that plaintiff was not entitled to renew the policy in its original form.
Appellee answers that it was within the jury's province to decide whether appellant's position was just and reasonable and that its determination of the issue should not be reversed by this Court unless the record reveals manifest error or abuse of discretion by the jury. He argues that the correspondence directed to appellant was notice to it that a reasonable question of its position existed and he urges that the proper course of action for appellant would have been to renew the policy without the rider and bring suit to obtain a judicial determination of its rights.
In the case of Fabacher v. Coastal States Life Insurance Co., 253 La. 852, 220 So.2d 99, it was held that it is essentially a question of fact which must be resolved from the record as to whether the provisions of LSA-R.S. 22:657 are properly invoked by the trial court.
This record shows that almost immediately upon being notified by appellant that it would not renew the policy without the *43 objectionable rider, appellee on February 19, 1966, notified appellant that he had consulted his attorney and was advised that the location of the caveat in the policy was not in compliance with the law. On March 18 appellant answered, insisting that the required language was on page 1 of the policy and pointing out that the policy had been approved by the Insurance Department of the State. On March 23 appellee's attorney wrote to appellant maintaining that the subject language was on page 3 in violation of the law and insisting that the policy was in effect in its original form. These respective positions were repeated in letters of March 29 from appellant to appellee's attorney, April 1 from the attorney to appellant, April 8, now from appellant's attorney to appellee's, April 12 from appellee's attorney to his counterparts and on April 14 from appellant's attorneys to appellee's.
Once this impasse was reached between the parties appellant had available to it another option, rather than to run the risk of being sued and incurring statutory penalties as it did here. In the case of Seguin v. Continental Service Life & Health Insurance Company, 230 La. 533, 89 So.2d 113, the Supreme Court reiterated the following language from Campasi v. Mutual Benefit Health & Accident Ass'n, 207 La. 758, 22 So.2d 55:
"It is argued for the insurance company that, as the question of interpretation of the exempting clause in question had not been decided by a Louisiana court when this suit was filed, the company acted `upon just and reasonable grounds' in denying liability. The company had the right, of course, to test the question of liability under the facts of the case, and to demand a judicial interpretation of the exempting clause in the policy of insurance,but not at the expense of the assuredexcept upon just and reasonable grounds. * * *"
Instead appellant stood firm to a position which was without merit and was now vulnerable to a charge of being unreasonable in view of the correspondence it had received from appellee and his attorney.
In the case of Gleason v. Banker's Life Casualty Company, La.App., 147 So.2d 86, the court in affirming an award of penalties and attorney's fees, said the following:
"We think the record justified the assessment of the penalties and attorney's fees. We are not unmindful of our jurisprudence that the statute in question is penal in nature and should not be inflicted unless the action of the insurance company in refusing to pay was clearly arbitrary and capricious. As far as the record shows, the only excuse given by this defendant for its continued refusal to pay after repeated demands by insured's counsel was that it had `conflicting statements' about Gleason's physical condition at the time he made application for his insurance." (Italics supplied)
Appellant relies on the cases of Blue v. Bunge Corporation, La.App., 225 So.2d 145; Manuel v. American Income Life Insurance Company, La.App., 212 So.2d 169; affirmed 254 La. 316, 223 So.2d 817 (1968); and McNeill v. Continental Casualty Company, La.App., 244 So.2d 693. In all of these cases the trial courts had declined to award penalties and attorney's fees which the appellate courts affirmed in each instance. The concise comment in the McNeill case is significant:
"The trial judge did not grant the penalties provided and his opinion does not inform us of any reason for this. However an examination of the record makes it apparent that he did believe that reasonable grounds existed for termination, and that the insurer should not be penalized with the additional penalties provided in the statute for improper termination of benefits."
*44 We agree with our brethren of the Second Circuit who stated in the Gleason case, supra:
"In the final analysis, the question of whether penalties should be inflicted in this type of case is a factual matter, and we are unable to find manifest error in this portion of the judgment appealed from."
The circumstances of this case including the narrow view taken by appellant that its page 3 was really the first page, its stubborn refusal to reconsider its position in the face of repeated communications from appellee and his attorney and its declination of its right to bring a suit of its own to have an adjudication of its position all combine to justify the jury's verdict that no reasonable grounds existed for its position. Certainly they preclude a showing of manifest error on the part of the trial court or jury in this case in finding that appellee was entitled to statutory penalties and attorney's fees.
The trial judge awarded to plaintiff $750 attorney's fees. No issue was raised with respect to this amount which under LSA-R.S. 22:657[1] is within his discretion.
Accordingly, the judgment of the trial court is affirmed but is amended so as to delete from said judgment the sum of $1,000 in damages and to amend the award of $500 for health and accident benefits under the terms of the policy to the sum of $312.30. Since, under LSA-R.S. 22:657, penalties are computed on the basis of an amount equal and in addition to the benefits[2], the judgment is further amended so as to reduce the amount of the penalties from $500 to $312.30. In all other respects the judgment is affirmed. Costs incurred in this appeal are to be divided equally between the parties.
Amended and affirmed.
NOTES
[1] "... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court...."
[2] West v. Lincoln Income Life Insurance Company, La.App., 239 So. 2d 379.