291 So.2d 824 (1973)
Horace DUPRE, Plaintiff-Appellee,
v.
HARTFORD LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 4354.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
*825 Jones, Kimball, Patin, Harper, Tete & Wetherill by Carl H. Hanchey, Lake Charles, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before FRUGE, SAVOY and PONDER, JJ.
FRUGE, Judge.
This is a suit for disability benefits under an accident and sickness insurance policy. Plaintiff is the insured and defendant the insurer. The District Judge awarded plaintiff the benefits sought plus statutory penalties and attorney's fees. The defendant appealed.
The substantial issues are:
(1) Did plaintiff's leg injury in July of 1966 result in "continuous total disability" within the meaning of the policy provisions.
(2) Is plaintiff entitled to penalties and attorney's fees, and, if so, how much?
THE COVERAGE ISSUE
The pertinent provisions of the policy are as follows:
"Benefit BAccident Total Disability: If injury shall result in a period of continuous total disability which commences within 30 days after the date of accident, the Company shall pay Accident Total Disability Benefits at the rate of the Accident Monthly Benefit specified in the Schedule for the period the Insured is so disabled, provided no indemnity shall be payable for the Accident Waiting Period specified in the Schedule."

* * * * * *
"Wherever used in this Policy:
"`Injury' means accidental bodily injury sustained by the Insured while this policy is in force and which results directly and independently of all causes in loss covered by this policy under Benefits A, B, C or D."

* * * * * *
"`Total Disability' means the complete inability of the Insured to perform each and every duty of his occupation until Monthly Indemnity has been paid for twenty-four months during any period of continuous disability; thereafter and *826 during the remainder of such period, `total disability' means the complete inability of the Insured to engage in any gainful occupation for which he is reasonably fitted by training, education or experience."
There is little dispute as to the facts. Actually, defendant called no witnesses.
In July of 1966 plaintiff was working as a cook on a dredge boat. His duties required that he stand on his feet for long periods of time, and that he lift heavy pots and other objects in preparing three meals a day for an average crew of about twelve.
On July 19, 1966, plaintiff was carrying a heavy garbage can when he slipped in grease on the deck and struck his left leg against an iron door. The next day he went to Dr. Roderick Perron, a general practitioner of Mamou. This physician found abrasions, swelling, redness, and inflammation along the back of the left leg between the knee and the ankle. He prescribed antibiotics and drugs for swelling.
When Dr. Perron next saw plaintiff, on July 25, 1966, he found manifestations of a massive thrombophlebitis of the deep vein of the leg, with infection. Plaintiff was hospitalized and treated with antibiotics, anticoagulants, and heat. He was in the hospital ten days. Then he continued treatment at home with drugs for pain and massive edema of the lower left leg.
When plaintiff's leg did not improve, Dr. Perron referred him to Dr. Page W. Acree, a surgeon in Baton Rouge. This specialist also diagnosed a deep venous thrombosis, i. e., a blood clot obstructing the large vein deep in the tissue of the leg. The lower leg was badly swollen and discolored with ulceration of the skin. It was the opinion of Dr. Acree that surgery would not help. The only treatment prescribed was an elastic stocking and drugs for pain and thinning the blood. The prognosis was poor. Dr. Acree thought plaintiff would ultimately have a chronic post-phlebitic leg.
In January of 1967, plaintiff asked Dr. Perron if he could return to work. The doctor advised against it because standing on the injured leg would cause the swelling and edma to worsen. Nevertheless, plaintiff stated that he could not live on the $200.00 per month benefit he was receiving from the defendant insurer. On January 16, 1967, he returned to work. Plaintiff says the work was an assistant cook, and that he was allowed to sit down most of the time. He worked for six months, but he had continuous swelling and pain in the leg, which became worse after having to stand up. On July 3, 1967, Dr. Perron finally told him that if he didn't quit the job he would lose his leg. Plaintiff quit that day and has not worked since.
On the request of the defendant insurer, plaintiff was examined on April 22, 1968, by Dr. Sam Nadler of New Orleans. This physician agreed with the diagnosis of cellulitis and thrombophlebitis of the left saphenous vein, with chronic swelling and skin changes. It was his opinion plaintiff was disabled from working due to pain and swelling which worsened on having to stand on his feet.
Dr. Perron continued to see and treat plaintiff to the date of trial on January 30, 1973. It is this physician's opinion that plaintiff has been continuously disabled from the date of his injury on July 19, 1966, and that the disability is total and permanent. He explained that at the time of the original injury the saphenous vein (the large vein from the lower leg to the heart) was blocked by a blood clot. The smaller veins were unable to take over, with the result that fluid entered the surrounding tissue and caused swelling, edema, and infection. The condition has worsened over the years and the prognosis is poor for any improvement.
The evidence also shows that plaintiff was about 50 years of age at the time of the accident, that he has only a fourthgrade education, and has worked all of his *827 life at manual labor of one type or another.
The issue is whether the injury resulted in "continuous total disability" within the meaning of "Benefit B" of the policy quoted above. The policy definition of "Total Disability" is "complete inability of the insured to perform each and every duty of his occupation until monthly indemnity has been paid for twenty-four months during any period of continuous disability; thereafter and during the remainder of said period, total disability means the complete inability of the insured to engage in any gainful occupation for which he is reasonably fitted by training, education or experience." (Emphasis supplied.)
Applying this definition of "total disability" to the present case, it is clear that from the date of the accident on July 19, 1966, there was complete inability of the insured to perform every duty of his occupation for at least the first 24 months. His occupation as cook required standing on his feet for long periods of time and lifting heavy pots, garbage cans, etc. He could not perform every one of these duties because, according to his uncontradicted testimony, he could not stand on his feet for the time required.
Additionally, after the first 24 months post-injury, plaintiff's "total disability" within the meaning of the policy continued because he was completely unable to engage in any gainful occupation "for which he is reasonably fitted by training, education or experience." As stated above, plaintiff has only a fourth-grade education and is not reasonably fitted by training or experience for anything except manual labor or cooking. The uncontradicted testimony of plaintiff and the physicians shows that he cannot perform work of this type because it requires standing on his feet.
The defendant's argument is that plaintiff's disability has not been "continuous" because he worked for six months, i. e., from January 19, 1967, to July 3, 1967. Under the policy provisions quoted above, this six months period during which plaintiff worked fell within the first 24 months post-injury. Therefore, plaintiff was totally disabled, within the meaning of the policy, if he was unable to perform every duty of his occupation during the six months he worked. The uncontradicted evidence shows that during this six months he did not and could not perform every duty of the occupation in which he was engaged at the time of the accident. He performed lighter duty as an assistant cook, was allowed to sit down most of the time, and was not required to do heavy lifting.
Counsel have found no Louisiana cases construing the clause in question. Defendant cites several cases from other states construing the words "continuous disability" against the insured, where he returned to work. Those cases are distinguished, since they did not involve a definition of "total disability" similar to the one in the present case, and a factual situation where the work to which the insured returned was lighter than his regular occupation.
We conclude that plaintiff's "total disability", as defined in the policy, has continued from the date of his injury and that he is entitled to benefits under "Benefit B" quoted above as long as this disability continues.
PENALTIES AND ATTORNEY'S FEES
The next issue is whether plaintiff is entitled to penalties and attorney's fees under LSA-R.S. 22:657(A), which requires that all claims under health and accident insurance policies be paid within thirty days from notice and proof of claim "unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist."
The facts are that the defendant insurer made the scheduled payments of $200.00 per month under "Benefit B" from the date of the accident on July 19, 1966, until plaintiff went to work on January 16, 1967. *828 No payments were made during the six months that plaintiff worked. When he quit work on July 6, 1967, the defendant insurer resumed payments of $200.00 per month, but instead of paying them under the above-quoted provisions for disability caused by accident, paid them under "Benefit E" of the policy, which provides for disability due to sickness. The policy limits sickness payments to 60 months for an insured under 60 years of age, such as plaintiff.
Defendant made no attempt to show it had reasonable grounds to believe there was a factual dispute as to whether the work which plaintiff performed during the six months in question was the same as that required by plaintiff's occupation of cook or manual laborer. The defendant insurer's failure to pay resulted from its erroneous construction of the policy. It contends the mere fact that the insured returned to gainful employment terminated the continuity of total disability resulting from the accident. For the reasons stated above, this is clearly an erroneous construction.
Our jurisprudence construing LSA-R.S. 22:657(A) holds that an insurer cannot escape penalties and attorney's fees because it misinterpreted the legal effect of its policy provisions, Thomas v. Universal Life Insurance Company, 201 So.2d 529 (La.App. 3rd Cir. 1967); Seguin v. Continental Service Life & Health Insurance Company, 230 La. 533, 89 So.2d 113 (1956); and Phelps v. Southern National Insurance Company, 83 So.2d 463 (La.App. 2nd Cir. 1955).
Defendant cites Negem v. National Central Life Insurance Company, 245 So.2d 469 (La.App. 2nd Cir. 1971), and Smith v. Washington National Insurance Company, 178 So. 691 (La.App. 2nd Cir. 1937), for the proposition that where the construction of an insurance clause is res nova in Louisiana, this is "reasonable grounds" to refuse to pay benefits. We do not construe these cases as stating so liberal a rule. If they do, we choose not to follow them, but instead to follow the jurisprudence from this court and our Supreme Court, which is cited above.
We conclude plaintiff is entitled to penalties and attorney's fees.
AMOUNT OF PENALTIES
The District Judge awarded plaintiff the total sum of $400.00 per month ($200.00 for benefits and $200.00 penalties) during the period of his indefinite disability beginning with July, 1972. The defendant insurer contends the penalty statute, as construed by the jurisprudence, limits penalties to those payments which are delayed by the insurer's refusal to pay. We find defendant insurer is correct.
LSA-R.S. 22:657(A) provides in pertinent part that the insurer shall pay a penalty "of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay." (Emphasis supplied.) In Thomas v. Universal Life Insurance Company, 201 So.2d 529 (La.App. 3rd Cir. 1967), we construed these provisions to mean that penalties are due only on the delayed payments, citing Bain v. Life & Casualty Insurance Company of Tennessee, 188 La. 290, 176 So. 129 (1937). The judgment appealed must, therefore, be amended to reduce the penalties to the period of delay.
ATTORNEY'S FEES
The District Judge awarded attorney's fees of $133.33 monthly beginning with the month of July, 1972, and cotinuing during the period of plaintiff's disability. Defendant contends the award is excessive and that it should be assessed in a lump sum amount, rather than a percentage. We agree.
At the time in question, plaintiff was approximately 56 years of age with a *829 life expectancy of ten years or more, during which he will probably receive the disability payments in question. On this basis, the attorney's fees of approximately $1,600.00 per year fixed by the trial judge would be $16,000.00 or more. This is clearly excessive. Under all of the circumstances, we find a lump sum of $5,000.00 as attorney's fees is appropriate.
For the reasons assigned, the judgment appealed is amended so as to reduce the period during which monthly penalties must be paid to that during which benefit payments are delayed, rather than the entire period of plaintiff's disability. Furthermore, the award for attorney's fees is changed to a lump sum of $5,000.00. Otherwise than as amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the appellant.
Affirmed, as amended.