302 So.2d 704 (1974)
Donald R. WILEY, Jr., Plaintiff-Appellee,
v.
LOUISIANA AND SOUTHERN LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 4746.
Court of Appeal of Louisiana, Third Circuit.
October 24, 1974.
Rehearing Denied November 20, 1974.
Writs Refused January 10, 1975.
*705 Jones, Walker, Waechter, Poitevent, Carrere and Denegre by James R. Murrell, III, New Orleans and Smith, Taleaferro, Seibert & Boothe by Leo Boothe, Jonesville, for defendant-appellant.
Arthur Cobb, Baton Rouge, and Wm. G. Avery, Jonesville, for plaintiff-appellee.
Before FRUGE, HOOD and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This action was brought by the plaintiff for benefits allegedly due him under two separate health and accident insurance policies issued by the defendant-insurer, in addition to penalties and attorney's fees. After trial on the merits judgment was rendered in favor of the plaintiff in the amount of $78,000.00. The trial judge gave no reasons for judgment. From said judgment the defendant has appealed.
The facts leading up to this suit are: On December 5, 1971, the plaintiff was seriously injured in an automobile accident and as a result has since become a partial quadriplegic and completely disabled. Immediately following the accident plaintiff was rushed to the Marksville General Hospital where he was examined and then *706 transferred to the St. Francis Cabrini Hospital in Alexandria. At the latter facility it was determined plaintiff had sustained a broken neck, but in order to more adequately treat the injury, he was again transferred to Schumpert Memorial Hospital in Shreveport, Louisiana. Plaintiff was confined in the Shreveport hospital from December 5th until January 8, 1972, at which time he was moved to the Catahoula Parish Hospital in Jonesville, so that he could be cared for closer to his home. On February 8th plaintiff was released from the hospital and taken home. During the following five month period plaintiff made trips, twice a week, to the New Orleans Charity Rehabilitation Hospital for therapy treatment. In addition he was readmitted to the Catahoula Parish Hospital for three days in April, 1972, and was later taken to the Jefferson Davis Hospital in Natchez, Mississippi, for examination from June 5th until June 8, 1972. Thereafter plaintiff was confined and treated at his home until September, 1972, at which time he was taken to the Craig Rehabilitation Hospital in Englewood, Colorado. Plaintiff was given therapy treatments for the duration of his stay at the Craig Hospital, from September 6th until November 22, 1972. From the date of this latter confinement, up to and through the trial herein, the plaintiff has been cared for at his home with occasional visits by a local physician.
As a result of plaintiff's injuries and the above-mentioned hospital confinements, large hospital and doctor's bills accrued, in addition to costs for ambulance services, wheelchairs, and other accessories. Fortunately, at the time of the accident the plaintiff was covered under two health and accident insurance policies.
One of the policies was originally issued by the defendant-insurer to the Louisiana Automobile Dealers Insurance Trust Fund, a member of which was Babin Motors in Jonesville, the employer of plaintiff's father. The plaintiff was listed as a dependent insured in this group policy.
The second policy was an individual policy also issued by the defendant to Donald R. Wiley, Sr., father of the plaintiff. Plaintiff was likewise considered a dependent under this latter policy. Although the pleadings indicate this suit was based upon the individual as well as the group policy the record reveals that plaintiff's claim does not actually concern the individual policy or the benefits thereunder.
The bills incurred by the plaintiff from the date of his accident until trial were submitted to the defendant-insurer. As of the date suit was filed (December 11, 1972) defendant had paid $6,542.60 under the individual policy (which had a $10,000.00 maximum major medical provision) and $11,063.40 under the group policy (with $50,000.00 maximum major medical benefits). Subsequent to suit being filed defendant paid out an additional $2,867.60 under the individual policy and $6,651.30 under the group policy.
The record indicates that all bills which had been tendered by the plaintiff were paid by the defendant as of the date of trial. There is no evidence of further medical expenses incurred.
The plaintiff originally filed this suit for $39,000.00 allegedly due him at that time under the group policy, plus $39,000.00 penalties and $39,000.00 for attorney's fees.[1] The aforementioned $39,000.00 claimed to be due under the group policy was the approximate amount remaining under the $50,000.00 major medical provision which had not yet been used by the plaintiff.
This claim is based upon a novel argument. Plaintiff alleges that noncommittal arbitrary actions on the part of the defendant-insurer denied him the opportunity to *707 exhaust the policy limits within the period of coverage and as a result he should be allowed to recover the amount which he would have otherwise spent. Specifically it is argued that plaintiff had to be removed from Craig Rehabilitation Hospital before his treatment could be completed, thus requiring him to forego vital treatment. Plaintiff avers were it not for defendant's actions his confinement at Craig would have continued past November 22, 1972, and the resulting costs would have exhausted the group policy limits.
This argument is based upon the following allegations. Plaintiff contends he had great difficulty in getting the defendant to pay bills which had accrued prior to confinement at Craig and had even been told on one occasion by an employee of defendant that plaintiff was only covered under the group policy until March 22, 1972, (which was three months past his 19th birthday) and by another that he was not covered beyond May 31, 1972. It is further asserted that defendant refused to send a letter of credit indicating plaintiff was covered by insurance for the Craig Hospital confinement and that defendant subsequently did not pay a bill tendered by the hospital for services rendered from September 6 through October 12, 1972, (plus a number of other bills) until after suit was filed. It is argued that as a result of the foregoing, as of November 22, 1972, plaintiff's father had good reason to believe that the defendant-insurer would not pay the bills at Craig and he had no choice but to remove his son from the hospital since the family could not afford the $110 a day bill accruing. Plaintiff also concludes that such actions were arbitrary and capricious and as a result penalties and attorney's fee should be assessed under LSA-R.S. 22:657.
In this regard, we find the facts to be as follows:
The group policy in question was cancelled as of June 1, 1972. Thereunder, however, plaintiff was entitled to major medical benefits for a period of one year from the date of termination (or until May 31, 1973) since he was disabled at the termination date.
Even before medical bills were submitted to the defendant in January, 1972, the record indicates some dispute existed as to coverage under the group policy. According to the admission form for Schumpert Memorial Hospital, the hospital business office talked to Ray E. Potts, claims manager for the defendant, on December 8, 1971, and was informed that plaintiff was not covered beyond three months past his December 22nd, 19th birthday. The record however indicates that a bill for services rendered at the hospital from December 5, 1971, through January 8, 1972, was submitted to the defendant, received on January 25, 1972, and paid under the individual policy. Subsequently the same bill was submitted, received on March 6, 1972, and paid on March 15, 1972, under the group policy.
The record further indicates that in March, 1972, there was a question of coverage in the individual policy in regard to ambulance trips to the Charity Rehabilitation Hospital in New Orleans. Thereafter the ambulance bills incurred were submitted, received July 19, 1972, and after a question of coverage was resolved, paid under the group policy on August 2, 1972. Further ambulance bills were later received on September 19th and paid under the group policy on September 20th.
Subsequently it is claimed that plaintiff's father had to call the defendant insurer regarding a bill for confinement in the Jefferson Davis Hospital in Natchez, Mississippi, and was told by a claims examiner, Mrs. M. B. Molea, that the plaintiff was not covered beyond May 31, 1972, (expiration date of the group policy) and that the bill had been incurred in June, 1972. Plaintiff asserts that the bill was tendered on both June 30th and September 14th, 1972, and rejected. The record only reveals however, that the bill was submitted *708 under the group policy number, received on July 3, and paid on July 7 under the individual policy. No payment was made under the group policy.[2]
Subsequently it was decided that plaintiff should be sent for therapy to Craig Rehabilitation Hospital. In order to ascertain if the defendant would pay for such confinement, plaintiff's father requested help from William G. Avery, a friend and later attorney for the plaintiff, who called the defendant and was told by Mrs. Molea that plaintiff was not covered beyond May 31, 1972. Thereafter Avery however talked to Ray Potts who informed him that plaintiff would be covered. Avery then requested a letter of confirmation guaranteeing defendant would pay for services rendered at Craig. A letter was subsequently sent to Avery outlining the group policy provisions. It did not however refer to Craig Hospital or specifically state that defendant would pay for the future confinement. Admittedly, this was not a "letter of credit" as often provided by the insurer to ensure the medical facility that the patient was insured.
It was however decided that plaintiff would be admitted to Craig, which was accomplished on September 6, 1972. Thereafter a bill was submitted under the individual policy by the hospital for services rendered from the date of admittance through October 12, 1972. The bill was received by the defendant on October 20, 1972, and on October 25th $1,684.80 was paid to Craig under the individual policy. Through an inadvertency the defendant did not pay any part of the submitted bill under the group policy. It was not until after suit was filed that the defendant realized its mistake, at which time (January 5, 1973) it paid the amount ($2,551.20) which the group policy would have provided for this period of confinement. Said payment was included in a check for $6,474.60 (paid under the group policy) issued on that date. Also included in the $6,474.60 check was payment ($2,709.80) for services rendered to the plaintiff at Craig from October 13th through November 22, 1972. This latter bill[3] had been submitted under the individual policy number and received by defendant on December 15th. Payment ($1,213.60) for five other bills was also included in this $6,474.60 check. Three of these were from Wheelchairs, Inc., one from Western Orthopedic Appliances, Inc. and one for Dr. Harry R. Hahn's services rendered at Craig from September 6th through October 31st.
It is alleged that by reason of the heretofore mentioned actions of the defendant, plaintiff had to be removed from the Craig Hospital. This, however, is not borne out by the evidence. As testified to by the plaintiff's father, the doctor who admitted plaintiff to Craig Hospital indicated plaintiff would probably need to stay at the hospital for 60 to 90 days, thereafter to return on a yearly basis for a period of approximately 30 days. The plaintiff did stay at the rehabilitation hospital for 78 days. It is admitted that the hospital at no time pressed the plaintiff's family for payment or indicated plaintiff had to be removed because of nonpayment. Instead, the defendant introduces a policy investigation report indicating the reason plaintiff was released was because continuing confinement was not necessary. There is no evidence to refute this report.
The first issue presented is whether under the facts of this case the insurer can be cast for the remaining balance of its policy limits under the major medical health insurance policy when the insured has not actually incurred any medical expenses which have not been paid.
*709 We conclude, for several reasons, that defendant insurer may not be cast under the policy for non-incurred medical expenses. First and foremost is the fact that the contract of insurance herein does not provide for such.
A contract of insurance, like any other agreement, is the law between the parties. Jennings v. Louisiana & Southern Life Ins. Co., 280 So.2d 297 (La.App. 1st Cir. 1973).
Page 22 of the group insurance policy in question sets forth the major medical benefits. The defendant-insurer's liability to make payments to the plaintiff is set forth in the following language:
"If any ... eligible dependent... while insurance for Major Medical Expense Benefits is in force with respect to such individual and as a result of ... any injury ..., shall incur ... Covered Medical Expenses which exceed the applicable Deductible Amount, the Company shall pay an amount equal to the Insured Portion of the Covered Medical Expenses... which exceed the applicable Deductible Amount, provided that the total amount payable on account of all Covered Medical Expenses of an individual during all years shall not exceed the applicable Maximum Major Medical Expense Benefit .... For the purposes of this insurance, an expense shall be deemed to have been incurred on the date the service for which the charge is made shall have been received or rendered...."
Elsewhere in the policy it is evident that the "insured portion" is 80% of any such expense and that the "Maximum Major Medical Benefit" is $50,000.00.
Also on page 22 of the said policy "Covered Medical Expenses" are defined as charges such as those made by a hospital for room and board, of a physician, of a physiotherapist, ambulance service, etc.
It is clearly the thrust of that particular insuring provision, as well as the contract in toto, that Louisiana and Southern Life Insurance Company was agreeing to pay Mr. Wiley only for charges actually incurred and not for any speculative medical charges which may have been incurred in the future.
Plaintiff's attorney also argues that defendant should be liable in tort for its actions under Civil Code Article 2315.
As pointed out in Caswell v. Reserve National Insurance Co., 272 So.2d 37 (La.App. 4th Cir. 1973) only Civil Code Article 1934(3) would provide a legal basis for any award to the plaintiff for general damages resulting from defendant-insurer's breach of its contract. Plaintiff has failed to prove that this case comes within the exception of Article 1934(3). Therefore plaintiff can recover only for the benefits under the contract or insurance policy. As aforementioned all of his medical expenses incurred (which were submitted) were paid as of the date of trial up through the extended liability period (to May 31, 1973).
The second and remaining issue is whether defendant's actions come within the meaning of LSA-R.S. 22:657(A) which reads:
"All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the *710 provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
The record indicates all of plaintiff's medical bills were paid by the defendant insurer within thirty days of receipt with the exception of the following, which were paid on January 5, 1973.
(a) $606.75 bill from Wheelchairs, Inc. received 10/12/72.
(b) $4,042.70 bill from Craig Rehabilitation Hospital received 10/20/72.
(c) $21 bill from Wheelchair, Inc. received 11/20/72.
(d) $275.00 bill from Western Orthopedic Appliances, Inc. received on 11/22/72.
(e) $6.50 bill from Wheelchairs, Inc. received 11/27/72.
Under the provisions of the group policy (providing payment for 80% of the medical expenses, subject to a $40.00 a day maximum for hospital room and board) $3,278.60 was due the plaintiff for the aforementioned bills. Only this amount was not paid within thirty days of notice and proof of claim.
The question remains as to whether the defendant had "just and reasonable grounds" for such non-payment. It is argued that the reason for not paying the bill under the group policy was the fact that plaintiff had submitted his claim under the individual policy number. The record however reveals that a number of the claims paid under both the individual and group policy were submitted under the "wrong" policy number, but were nevertheless paid. Regardless, we feel that the insurer who knows that the plaintiff is covered under two separate policies issued by it, and is paying under both of the policies at the same time, is held responsible for making sure its internal administrative personnel pay under both policies according to their terms. Mere inadvertency and neglect on its part is not the "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard" as envisioned in LSA-R.S. 22:657(A).
Where the insurer's failure to continue benefits by paying claims is not "just and reasonable" 100% penalties (of the amount overdue) and reasonable attorney's fees should be assessed against the insurance company. Dupre v. Hartford Life Ins. Co., 291 So.2d 824 (La.App. 3rd Cir. 1973); Rushing v. American Income Ins. Co., 274 So.2d 458 (La.App. 3rd Cir. 1973); Felker v. Aetna Life Ins. Co., 234 So.2d 758 (La.App. 1st Cir. 1970).
Plaintiff should therefore be awarded penalties in the sum of $3,278.60 and attorney's fees in the sum of $3,000.00 which we deem proper under the facts of this case. Felker v. Aetna Life Ins. Co., supra.
For the above and foregoing reasons the judgment of the district court is amended so as to reduce the award from $78,000.00 to $6,278.60, together with legal interest thereon from date of judicial demand until paid, and as thus amended is affirmed. Costs of this appeal are assessed in equal portions to the plaintiff and defendant.
Amended and affirmed.
FRUGÉ, J., concurs in part and dissents in part.
FRUGÉ, Judge (concurring in part and dissenting in part).
While I agree with my colleagues that the award in this case must be reduced, I cannot subscribe fully to their majority opinion.
*711 The majority concludes that since the policy provides coverage only for medical benefits actually incurred, there is no basis (other than the penalty and attorney's fees allowed by R.S. 22:657(A)) for an award beyond those expenses actually incurred. The conclusion is that a greater award would constitute general damages for which there is no provision for recovery. I cannot agree.
Civil Code Article 1930 provides as follows:
"The obligations of contract extending to whatsoever is incident to such contract, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default."
Where a health and accident insurer breaches its contract by refusing to pay the benefits agreed to in the contract and this refusal prevents a party from receiving treatment for which there is coverage, the latter is entitled to recover, as damages, such benefits as would have been used. In such a case the default by the insurer does not cause general damages but rather damage directly attributable to the breach. The recovery of these damages is allowed under Article 1930.
The case of Caswell v. Reserve National Insurance Co., 272 So.2d 37 (La.App. 4th Cir. 1973) is distinguishable from the case before us. In Caswell, a jury found that health and accident benefits of $500 were due plaintiff. The jury also awarded $1,000 as damages. On appeal the court found no legal basis for the $1,000 award which it characterized as general damages. The court concluded that the only possible basis for the award was under Civil Code Article 1934(3), but did not find "that the object of [the] contract was the gratification of any intellectual enjoyment on behalf of the plaintiff." In Caswell there was no claim, as there is here, that the breach by the insurer prevented the insured from using available benefits. The plaintiff there sued to recover medical expenses actually incurred. Here the contention is that the breach prevented plaintiff from incurring necessary medical expenses.
The Legislature in enacting R.S. 22:657(A) has provided a penalty for the insurer's failure to pay a covered claim without "just and reasonable grounds." This statute contemplates a situation in which the insured actually incurs medical expenses which the insurer unreasonably refuses to pay. Where the insurer's breach prevents a party from actually incurring necessary medical expenses, we must look to the damage provisions of the Civil Code. As previously stated Article 1930 would, in my opinion, allow recovery.
Plaintiff contends that due to insurer's refusal to pay he was prevented from using the additional $39,000 available (when suit was filed) under the group policy. I do not find sufficient proof of this contention. However, there is sufficient evidence to show that plaintiff was forced to leave the Craig Institute earlier than he would have because of defendant's refusal to pay under the group policy.
The evidence indicates that plaintiff was to remain at Craig from 90 to 120 days. Because of non-payment under the group policy by the defendant insurer he was forced to leave after only 78 days. The plaintiff and his father testified that this was prior to completion of the rehabilitative treatment he was to receive there. There is no testimony as to how much longer plaintiff would have remained had the insured paid under the policy. However, I think it was established that plaintiff would have remained at least 90 days. The price of the treatment at Craig was established to be $110 per day. I would therefore award plaintiff $2,640 (12 days at $110 per day plus the penalty provided by R.S. 22:657(A)) in addition to the award made by the majority.
NOTES
[1] After suit was filed defendant paid $6,651.30 under the group policy and plaintiff in his brief to the trial court alleged that he should denied him the opportunity to recover $39,000.00, subject to a credit for the $6,651.30, plus $39,000.00 penalties and reasonable attorney's fees.
[2] A bill from St. Francis Cabrini Hospital in Alexandria for services rendered on December 5, 1971, was also submitted under the individual policy number and paid by defendant on February 29, 1972. No payment was made however under the group policy.
[3] An amount was also paid under the individual policy at this time for the October 13th through November 22nd bill.