CALOGERO, Justice.
Plaintiff John B. Massengill, a former employee of Owens-Illinois Glass Company, retired as totally disabled because of a back condition in the year 1967 at the age of 56. For nine years, he received monthly disability benefits under a group policy issued by Aetna Life Insurance Company to Owens-Illinois Glass Company for its employees. For that inclusive period, the policy provided for payments whether the disability was caused by injury or by disease. Under the policy, however, the covered employee is no longer entitled to such payments after age 65 if the disability was caused by disease rather than by injury.
In 1976 when Massengill became 65 years old, Aetna discontinued the payments, reasoning that his disability had not been caused by injury. Rather, the insurer claimed his disability was caused by disease. Plaintiff Massengill sued for a judgment declaring that his disability had been caused by injury and that he thus continued to be entitled to benefits. In a supplemental petition, plaintiff sought penalties and attorney’s fees for Aetna’s termination of his benefits at age 65. The trial judge, with excellent written reasons,[1] declared that the *518 disability had been caused by injury, awarded Massengill $11,566.52 for benefits due from December, 1976 through date of final judgment, but denied plaintiff penalties and attorney’s fees. Both parties appealed. Aetna disputed the trial judge’s finding that Massengill’s disability was caused by injury, not by disease. Massengill questioned the denial of penalties and attorney’s fees and the trial judge’s computation of benefits due.[2]
The Court of Appeal (1) affirmed the trial court’s determination that the disability was caused by injury; (2) held additionally that the disability “eommence[d] within the ninety day period immediately following the accident...” (Article II, § 1(c)) to come within the policy’s definition of injury; (3) affirmed the trial court’s denial of penalties and attorney’s fees; and (4) amended the trial court’s lump sum figure to allow for a fixed semi-monthly figure
due plaintiff of $204.82 from December 1, 1976 through the trial court’s judgment on December 12, 1979 (a total of $14,951.86) with the semi-monthly payments to continue at $204.82 thereafter. 394 So.2d 764 (La.App. 4th Cir. 1981) Pertinent to the matter now before this Court, the Court of Appeal in effect allowed Aetna to deduct the plaintiff’s Social Security benefits that he received and would receive for old age insurance after age 65.
Both parties sought writs. Aetna complained that the lower courts erred in determining that Massengill’s disability was caused by injury, not by disease. We denied Aetna’s application and that issue is no longer before us. 400 So.2d 668 (La.1981). Plaintiff complained in his writ application (1) that the Court of Appeal erred in allowing Aetna to deduct the Social Security payments the insured received for old *519 age insurance after age 65,[3] (2) that the Court of Appeal erred in denying penalties and attorney’s fees. We granted plaintiff’s writ to consider these two issues. 400 So.2d 667 (La.1981). They are the only matters now before us.
COMPUTATION OF BENEFITS
As we read the policy provisions, the disabled retiree receives a determinable amount calculated monthly, payable semimonthly, subject to the following deductions: (1) a private retirement plan for employees payable to those over 65 only; (2) disability benefits payable under social security or workmen’s compensation (the latter of which is not relevant here).[4] Accordingly, for nine years preceding age 65, there was no pension deduction but the disability payments which plaintiff received under the social security system for being disabled were deductible. That is how Mas-sengill was paid and those payments are not at issue in this suit.
Relator’s specific complaint centers on the changing character of the Social Security payments at age 65 and the Court of Appeal’s failure to see the distinction.[5] We agree with relator’s understanding of the Federal Social Security Act. The disability insurance under the Federal Social Security Act extends only to age 65. “Every individual who . . . (B) has not attained the age of sixty-five . . . shall be entitled to a disability insurance benefit. . . . ” 42 U.S.C. § 423(a)(1). Thereafter, old age insurance benefits are due. “Every individual who . . . (3) . . . was entitled to disability insurance benefits for the month preceding the month in which he attained the age of 65 [as well as those who have simply attained the age of 62] shall be entitled to an old age insurance benefit. . . . ” (42 U.S.C. § 402(a)). Under the insurance policy, Aet-na may deduct only Social Security disability payments, so Aetna may not deduct Mas-sengill’s Social Security old age benefits, that which he has received after turning 65.
Furthermore, we agree with relator that the policy at issue allows for the determination of benefits each benefit period by deducting the “other income benefits” received “for the same semi-monthly period.” [6] This language does not require that *520 the benefits as originally fixed be unchanged thereafter. Rather the reverse is apparently contemplated.
*519 The amount of semi-monthly benefit payable in accordance with this Article shall be an amount equal to the excess of the applicable amount determined from the following table over the amount, if any, of semi-monthly income payable for the same semi-monthly period by reason of other income benefits hereafter defined:
*520 Because we have found the only Social Security benefits at issue in this case (i. e. post 65) to be fully nondeductible in computing benefits, it is unnecessary for us to consider the public policy question addressed by the Court of Appeal (See footnote 5). We do not therefore have to decide whether it is against public policy for Congressional increases in social security payments to inure to the benefit of a private insurer. However, we do note that there is jurisprudence contrary to the Court of Appeal’s resolution of this issue. See Hurd v. Bell Telephone Company, 234 F.2d 942 (7th Cir. 1956).
PENALTIES AND ATTORNEY’S FEES
La.R.S. 22:657(A) provides that
[a]ll claims arising under the terms of health and accident contracts issued in this state, . . . shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. . . . Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court. (Emphasis provided).
Plaintiff asserts that Aetna had no just and reasonable grounds to terminate payments at age 65 and therefore penalties and attorney’s fees are appropriate.
It is significant that the initial awarding of total disability payments did not require a determination of whether Mr. Massen-gill’s disability was caused by disease or by injury. The policy covered both until age 65. Aetna’s position that the disability was caused by disease and Aetna’s refusal to pay after age 65 is entirely consistent with their paying earlier benefits under the policy. No definitive determination of causation was required before Massengill became 65.
Though the trial court came to the conclusion that Mr. Massengill’s disability resulted from injury, there was evidence presented over which reasonable people, and in fact reasonable doctors, could disagree. Claim forms and letters on file with Aetna contained references to Mr. Massen-gill’s injuries and ailments, with no single conclusive statement as to the actual basis for his total disability retirement. The varying opinions of medical professionals over the classification of osteoarthritis and degenerative disc “disease” was present in testimony and depositions. Quoting one doctor: “Arthritis is sort of a half medical half orthopedic problem. That’s part of the trouble.” We therefore find no bad faith on the part of the insurer in determining to discontinue benefits at age 65. Cf. Sequin v. Continental Service Life and Health Insurance Co., 230 La. 533, 89 So.2d 113 (La. 1956). Penalties and attorney’s fees are denied.[7]
The district court denied penalties and attorney’s fees and awarded a lump sum of $11,566.52 to Mr. Massengill for all benefits due from December 1976 through the date of final judgment below. The Court of Appeal affirmed the denial of penalties and attorney’s fees but amended the district court’s money judgment. The Court of Appeal awarded $204.82 semi-monthly from December 1, 1976. But this figure allowed *521 a deduction for both the Social Security payments with respect to old age and the monthly pension Massengill receives from Owens-Illinois. Because we differ with the Court of Appeal’s calculations and because we cannot determine the specific figures or deductions used by the trial court to arrive at its lump sum award, we remand this case to the district court for calculations in accordance with this judgment.

Decree

Accordingly, the judgments of both the district court and the Court of Appeal are set aside. The case is remanded to the district court for judgment to be entered, calculated without allowing a deduction of plaintiff’s Social Security benefits and otherwise in accordance with this opinion.
DISTRICT COURT AND COURT OF APPEAL JUDGMENTS SET ASIDE; REMANDED.
DIXON, C. J., concurs in part and dissents in part with reasons.

. The trial judge reasoned:
. . . The record reflects that petitioner, John Massengill, has suffered four injuries to his neck and back over a period of time. The first injury occurred in 1937 when he fell from a swivel chair and was hospitalized. The next accident occurred when he fell down the steps in his house sometime in the forties. The third accident occurred in 1956 when Mr. Massengill was involved in an automobile accident. As a result of the auto accident, Mr. Massengill suffered a cracked vertebra in his spine. He was put in traction with a neck brace for approximately eight days. In 1965, Mr. Massengill while carrying his suitcase from the airport to his car suffered a fall and was hospitalized.
Mr. Massengill was the New Orleans District salesmanager for the Owens-Illinois Glass Company. His job required that he travel quite extensively by both plane and car calling on customers and designing containers. Furthermore, his job called for stooping down to calculate measurements for customers.
*518 The evidence reflects that petitioner has suffered, over a period of time especially since the 1956 auto accident, with back pains that have become more and more painful. The after effects of the last two accidents were that he suffered pain if he sat too long, walked too far, or carried too much weight. Additionally, his thighs would tremble if he stood for anytime or walked for any distance.
Dr. Prieto’s report of August 31, 1967 stated:
The extent of the changes that have occurred in your back will give rise to permanent symptoms. The type of work which you perform calling for frequent airplane and automobile trips, walking, standing, lifting suitcases, etc. aggravates your symptoms and produces more disability.
As a result of Dr. Prieto’s report of August 31, 1967, Mr. Massengill was retired as disabled in September of 1967. Aetna paid the disability benefits to Mr. Massengill until he reached age 65, wherein on the belief that his disability was caused by disease, they terminated the benefits.
This Court is of the opinion that the weight of the evidence indicates that it was more probable than not that Mr. Massengill’s disability was traumatic in origin.
Dr. Irving Redler who treated Mr. Massen-gill at the time he became disabled testified that it was his opinion that Mr. Massengill was suffering from degenerative disc disease. Furthermore, Dr. Redler was of the opinion that it was more probable than not that trauma was the origin.
Dr. Thomas Oelsner who also treated Mr. Massengill issued a written report stating that x-rays of Mr. Massengill’s spine in the past have confirmed the diagnosis of osteoarthritis secondary to his previous injuries. Dr. Oelsner also testified in his deposition that in his opinion, the pain disabled Mr. Massengill.
Although the evidence is not totally conclusive and there is a possibility that an arthritic condition contributed to Mr. Massengill’s disability, this Court believes that in weighing all the evidence, it is more probable than not that the principal or proximate cause of Mr. Mas-sengill’s disability was due to injury and not disease. Certainly, the evidence reflects that the accidents involving Mr. Massengill, especially the auto accident and the fall in 1965, produced severe enough injuries to have caused Mr. Massengill considerable pain .... (Footnotes omitted).

. The trial judge did not itemize the monthly figures that he used to calculate the total amount owed by Aetna Life Insurance Company at the trial’s conclusion, nor did the judge specify which, if any, deductions he was allowing. Plaintiff claimed on appeal that there must have been a mathematical error in the trial court’s computations since the plaintiff was unable to arrive at the same total for the interim in question. In fact, plaintiff argued that even if the judge allowed Aetna the advantage of both deductions (with which plaintiff does not agree), the total amount due would be greater than the figure in the final judgment.

. In the alternative, plaintiff argued that if this Court should allow Aetna to deduct the Social Security payments after age 65 because the amount due the group policy should be fixed at the outset of the disability retirement and unchangeable, then the non-deductible nature of the private pension at age 56 should continue even after Massengill actually began to receive the pension at age 65. We do not address this alternative argument because of our resolution favorable to the relator on his principal contention.

. Article II § 3(B) of the group insurance policy enumerates in pertinent part:
B. Other income benefits, referred to above [as deductible] shall include...
(2) as to an employee age sixty-five or over only, any payment under a retirement plan covering employees of any Participant Employer, and
(3) any periodic cash payments with respect to disability commencing after the effective date of the employee’s insurance under this policy and provided by the Federal Social Security Act or pursuant to any workmen’s compensation law.

. The Court of Appeal was concerned about a private insurer’s benefiting financially from social security increases.
. . . public policy cannot allow a private insurer to reduce its disability benefits in an amount equivalent to social security increases, for that would defeat the Congress in its efforts to better the disabled’s lot by granting a cost-of-living increase. Certainly it is not the Congress’s intent to provide funds out of the social security trust fund to reduce private insurers’ obligations under policies whose premiums were paid years before. We therefore also reject plaintiff’s argument that all Social Security payments after age 65 are with respect to old age and therefore would not be deductible even though similar payments before age 65 would be deductible from the insurance benefit. 394 So.2d 765, 766.

.Article II 3(A) of the group policy provides in pertinent part:

. Because the issue of whether Mr. Massen-gill’s disability was caused by injury or by disease was in itself litigable and because we agree with the Court of Appeal that Massen-gill’s disability began within the relevant 90 day period (394 So.2d 764, 765 (La.App. 4th Cir. 1981), we do not address the question of whether penalties and attorney’s fees might be allowed in cases where the only issue is an interpretation of the insurer’s own policy language. Martin v. American Benefit Life Insurance Company, 294 So.2d 200, 203 (Tate, J., dissenting).